FIRST INTERREGIONAL ADVISORS
CORP., Plaintiff,

v.

Emanuel WOLFF, Slovie Wolff, Mark Ka-
rasick, Thomas Tyndall, Capital Infor-
mation Company, Limited Partnership,
Rachell Skydell, Tee Two, Inc., Manhat-
tan Management, Inc., Chadwick Fund-
ing Company, L.P., Mentom Corp., Ome-
ga Tel, Inc., E.C.B. Communication,
Inc., Telamerica Acquisition Inc., and
Burham Corp., N.V., Defendants.

No. 95 Civ. 8725(DC).

United States District Court,
S.D. New York.

Feb. 21, 1997.

Patterson, Belknap, Webb & Tyler LLP by John D. Winter, Lisa C. Cohen, Sheryl Stoessel, Kieran G. Doyle, New York City, for Plaintiff.

Zane & Rudofsky by G. Robert Blakey, James B. Zane, Edward S. Rudofsky, Arlene H. Schecter, New York City, for Wolff Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

In this case brought by First Interregional Advisors Corp. ("FIAC") pursuant to the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), defendants Emanuel Wolff ("Wolff"), Slovie Wolff, Mark Karasick, Rachell Skydell, Manhattan Management, Inc., Chadwick Funding Company and Burham Corp., N.V. (collectively, the "Wolff Defendants") move pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure to dismiss the complaint. The Wolff Defendants challenge the

sufficiency of almost every aspect of FIAC's claims. The complaint, however, describes in detail a highly complex, multi-faceted, RICO scheme. Hence, the motion to dismiss is denied, except that it is granted with respect to several defendants as to whom the allegations of the complaint are insufficient. In addition, the Wolff Defendants have moved to disqualify Patterson, Belknap, Webb & Tyler LLP as counsel for FIAC. That motion is denied.

## BACKGROUND

Defendant Capital Information Company ("CIC") was in the business of buying and financing accounts receivable from companies known as "information providers." (Compl.¶ 7). Information providers receive telephone calls from customers and, for a fee, provide various types of information over the telephone lines. The information is either provided by the information provider itself, or by a subcontractor called a "service bureau." (Id. at ¶ 24). The billing for each of these telephone calls is recorded on a computer tape, which is readable only by sophisticated computer equipment. (Id.).

The information provider takes these tapes and sends them to the telephone company, which pays for them upon receipt. (Id. at ¶ 25). The telephone company, however, does not pay for these tapes in full, but instead holds back a percentage—based on the information provider's past history of collection—as security for any calls recorded on the tape that turn out to be uncollectible. (Id. at ¶ 26). The telephone company then bills its customers for the calls provided by the information provider. Once the telephone company gets paid for the calls on the tape, it reimburses the provider for the percentage that was held back as security. (Id. at ¶ 27). Because of the steps involved between the telephone company's receipt of the tapes and payment from the customer, it may take several months for the information provider to receive the total revenues it is entitled to from any one tape. (Id. at ¶ 28).

To avoid this delay in payment, information providers sell the amount they are owed by the telephone companies in the form of "accounts receivable." (Id.). These accounts receivable—which are also recorded on computer tapes—are sold to telephone finance companies. The finance companies purchase the tapes at a discount and then realize the difference between this discounted sales price and the full payment from the telephone companies as profit. (Id.).

In May 1994, CIC and defendant Tyndall met FIAC to discuss the possibility of FIAC financing CIC's purchase of accounts receivable. (Id. at ¶ 29). FIAC alleges that at this meeting, Tyndall "painted a picture of a sterling financial and business record of ... CIC ... and claimed that the business was characterized by tremendous growth." (Id.). FIAC claims that over the next several weeks, defendants CIC, Tyndall, and Karasick committed acts of mail and wire fraud in an effort to obtain financing from FIAC. For example, FIAC alleges that during a phone conversation on June 13, 1994, defendants Karasick and Tyndall represented to FIAC that the accounts receivable were "99% collectible" and that numerous other companies had been very successful as a result of their dealings with CIC. (Id. at ¶ 31).

FIAC alleges that this scheme continued into late May and early June 1994, when the defendants committed additional acts of mail fraud by sending FIAC inaccurate income statements purporting to show the success that other companies were having financing CIC's purchase of accounts receivable. (Id. at ¶ 33). FIAC claims that the income statements were fraudulent in a number of ways and were sent by defendants in an effort to convince FIAC to loan money to CIC. FIAC states that based on these and other misrepresentations communicated to it through the mail and over the telephone, it agreed to loan large amounts of money to CIC. (Id. at ¶ 37). The complaint goes on to allege that over the course of the next several months, FIAC was defrauded into making seven or eight additional loans totalling some $3 million, again through a pattern of mail and wire fraud. (Id. at ¶¶ 41–43).

The alleged scheme eventually came to an end when FIAC visited CIC's Florida offices to investigate the possibility of buying out defendant Wolff's share of CIC. Upon arriving there, FIAC discovered that CIC's busi-

ness was in serious financial trouble. (*Id.* at ¶ 87). Ray Parrish, CIC's newly hired controller, informed FIAC that CIC could not pay its bills and had been unable to do so for some time. In addition, Mr. Parish stated that CIC had been undercapitalized from its inception and that it was likely to go bankrupt. (*Id.*).

Based on this information, FIAC demanded that CIC turn over the money securing FIAC's loans. (*Id.* at ¶ 90). FIAC also demanded payment from Tyndall, who had signed a guaranty covering the loans that FIAC made to CIC. (*Id.* at ¶ 91). In February 1995, FIAC withdrew whatever money was available in CIC's accounts. FIAC alleges, however, that as a result of the fraudulent acts of the defendants, FIAC lost nearly $2.2 million in principal and interest. (*Id.* at ¶ 94).

FIAC commenced this action on October 12, 1995. The complaint alleges, *inter alia,* that defendants, through a pattern of mail and wire fraud, acquired an interest in, controlled, and invested in a criminal enterprise consisting of the named defendants and other individuals, corporations and partnerships associated in fact (the "Enterprise"). FIAC further alleges that the defendants used this Enterprise to defraud several lenders and investors, including FIAC, into loaning several million dollars to CIC. In addition, FIAC alleges nine separate counts of state law violations.

### DISCUSSION

### I. Standards for Motion to Dismiss

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), I must view the complaint in the light most favorable to plaintiff and accept all allegations contained in the complaint as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Annis v. County of Westchester,* 36 F.3d 251, 253 (2d Cir.1994). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Thus, when deciding whether to grant the Wolff defendants'

motion, the issue "is not whether [FIAC] will ultimately prevail, but whether [FIAC] is entitled to offer evidence to support the claims" it alleges in its complaint. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

Further, because FIAC's claims are based on allegations of fraud, they must satisfy the pleading requirements of Fed.R.Civ.P. 9(b). Rule 9(b) states in part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, to satisfy the particularity requirement of Rule 9(b), FIAC's complaint must "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989).

With these standards in mind, I turn to the Wolff Defendants' motion to dismiss.

### II. Challenges to Count I—RICO

Section 1964(c) of the RICO statute authorizes a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Thus, to state a claim for damages under § 1964(c), a plaintiff must first allege a violation of the substantive RICO statute, 18 U.S.C. § 1962. That section requires a plaintiff to allege (1) that the defendants, through the commission of two or more acts constituting a "pattern of racketeering activity," (2) violated sub-sections (a), (b), or (c) of § 1962 by directly or indirectly investing in, maintaining an interest in, or participating in an "enterprise" the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)-(c); *Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). In addition, § 1962(d) makes it a violation to conspire to do any of the acts listed in § 1962(a), (b), or (c).

The Wolff Defendants attack the sufficiency of almost every element of FIAC's RICO claim. They argue that FIAC has failed to

properly allege that each defendant committed two "racketeering acts" and failed to describe each of the acts of mail and wire fraud with the particularity required by Rule 9(b). They also claim that FIAC has not alleged a "pattern of racketeering activity" or the elements of a violation under 18 U.S.C. § 1962(a), (b), (c), or (d) Finally, the Wolff Defendants argue that under the facts as alleged in the complaint, none of the defendants is or could be liable for aiding and abetting a RICO violation.

### 1. *"Racketeering Activity" and Rule 9(b)*

■ To state a RICO claim against a particular defendant based on allegations of mail and wire fraud, the complaint must allege that the defendant participated in at least two acts of mail or wire fraud. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.1993); *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990). In addition, pursuant to Rule 9(b), the complaint must allege the content of the fraudulent communication, who made and received the communication, where and when it took place, and describe why the information transmitted was fraudulent. 12 F.3d at 1176, 897 F.2d at 79. Finally, the complaint must "provide some minimal factual basis" that gives rise to a strong inference of fraudulent intent. *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir.1995). The Wolff Defendants claim that FIAC has failed to meet each of these elements. I disagree.

■ The complaint in a RICO action need not be specific as to each allegation of mail or wire fraud when the nature of the RICO scheme is sufficiently pleaded so as to give notice to the defendants. *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir.1987). This is especially true when the sufficiency of the complaint is being considered before discovery has taken place and when the "information is exclusively in the possession of those participating in the fraud." *Id.; Constellation Bank, N.A. v. C.L.A. Management Co.*, No. 94 Civ 0989, 1995 WL 42285, at *22–23 (S.D.N.Y. Feb.1, 1995); *In re AnnTaylor Stores Sec. Litig.*, 807 F.Supp. 990, 1004 (S.D.N.Y.1992). It is with these standards in mind that I must view the sufficiency of FIAC's complaint.

FIAC has adequately pleaded the content of several acts of mail and wire fraud. (*See, e.g.,* Compl. ¶¶ 30–31, 41–43, 71, 75 & 101). In addition, when the complaint is read as a whole, and the inquiry is not limited to specific paragraphs of the complaint viewed in isolation, it is sufficient to meet the pleading requirements of Rule 9(b). FIAC has sufficiently alleged the content, speaker, date and nature of several of the fraudulent communications, and the complaint is sufficient to "inform [at least some of the defendants] of the nature of [their] alleged participation in the fraud." *DiVittorio*, 822 F.2d at 1247.

■ The complaint, however, does not sufficiently allege mail and wire fraud as to *all* of the named defendants. In fact, a number of the defendants are given no more than a brief mention in a few paragraphs of the complaint. The only defendants who FIAC has properly alleged committed two acts of mail or wire fraud are Wolff (under a theory of aiding and abetting to be discussed *infra* ), CIC, Mark Karasick and Thomas Tyndall. (*See, e.g.,* Compl. ¶¶ 30–31, 33–35). FIAC has failed to sufficiently allege that the other defendants participated in *any* acts of mail or wire fraud. While, FIAC does allege that the RICO enterprise was carried on by all defendants, general conclusory allegations such as this are not sufficient under Rule 9(b). *Ouaknine*, 897 F.2d at 79. Thus, Count I is dismissed as to all defendants except Wolff, CIC, Mark Karasick, and Thomas Tyndall.

### a) *Aiding and Abetting*

■ In addition to alleging that each of the defendants participated directly in the RICO violations, FIAC alleges in the alternative that each defendant aided and abetted the RICO violations. (Compl.¶ 3). A party can be found liable of aiding and abetting a RICO violation only when that party had some part in directing the affairs of the RICO enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S.Ct. 1163, 1170, 122 L.Ed.2d 525 (1993). Merely being associated with the RICO enterprise is insufficient to establish liability under RICO. *Id.* In the

present case, FIAC has adequately alleged that Wolff was not only associated with the Enterprise in this case, but also took part in directing its affairs. (*See, e.g.,* Compl. ¶¶ 3, 30, 34, 45–64). Thus, FIAC has sufficiently pleaded that Wolff "aided and abetted" a violation of the RICO laws. The same holds true for defendants CIC, Karasick, and Tyndall. (*See, e.g.,* Compl. ¶¶ 30–31, 33–35).

■ FIAC, however, has failed to make this showing as to any of the remaining defendants. FIAC has merely alleged that those defendants were associated with the Enterprise. The complaint is lacking in any facts that suggest these defendants participated directly *or* indirectly in the RICO violations. While FIAC does allege that some of these defendants were part of the Enterprise and may have profited from the RICO acts carried on by others, they have not alleged the participation required to establish liability under § 1962. Hence, FIAC has failed to properly plead "aiding and abetting" as to any defendants except Wolff, CIC, Mark Karasick, and Thomas Tyndall.

### 2. *"Pattern of Racketeering Activity" and continuity*

■ The Wolff Defendants' next challenge to FIAC's complaint is that it fails to allege a "pattern" of racketeering activity. They claim that FIAC has alleged a "single scheme, with a single victim, extending over only a six month period" that does not threaten continued criminal activity. (Def. Mem. at 19). They argue, therefore, that FIAC has failed to meet the requirements of § 1961(5) and § 1962. I disagree.

Section 1961(5) loosely defines a "pattern" as two or more related acts. 18 U.S.C. § 1961(5). To be related, the acts of mail and wire fraud must have the "same or similar purposes or results, participants, victims ... and [can not be] isolated events." *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 237, 109 S.Ct. 2893, 2899–2900, 106 L.Ed.2d 195 (1989). The Supreme Court, however, has interpreted § 1961(5) as requiring more than simply two related racketeering acts. Instead, to prove a "pattern" of racketeering activity, a plaintiff must show that the racketeering predicates were "relat-

ed, *and* that they amount[ed] to or pose[d] a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. at 2900 (emphasis in original). Continuity refers to either "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. In addition, the Supreme Court has held that the continuity requirement can be met where it is shown that the predicate racketeering acts were a "regular way of conducting defendants' ongoing legitimate business." *Id.* at 243, 109 S.Ct. at 2902.

I find that FIAC has sufficiently alleged both closed- and open-ended continuity. FIAC has alleged a scheme that defrauded not one but several lenders and was supported by numerous predicate acts that occurred over a period of almost fourteen months. (*See* Compl. ¶¶ 30–48). Viewing the complaint in the light most favorable to FIAC and drawing all reasonable inferences in its favor, I find that FIAC has sufficiently alleged a "closed period of repeated conduct" establishing a "pattern of racketeering activity." Likewise, because FIAC has alleged that the predicate racketeering acts of mail and wire fraud were a regular way that the Enterprise in this case conducted its "ongoing legitimate business" of buying accounts receivable, it has sufficiently pleaded "open-ended continuity." (*See, e.g.,* Compl. ¶¶ 30–48, 59–66). Thus, under either method, FIAC has alleged a "pattern of racketeering activity" as defined by § 1961(5) and required by § 1962.

### 3. *Sub-sections (a), (b), (c), and (d) of § 1962*

The Wolff Defendants next argue that FIAC has failed to allege facts sufficient to demonstrate a claim under §§ 1962(a), (b), (c), or (d).

#### a) *§ 1962(a) Claim*

■ To satisfy § 1962(a), a plaintiff must allege that it suffered an "injury by reason of defendants' investment of racketeering income in an enterprise." *Ouaknine,* 897 F.2d at 83. The injury to plaintiff must come from the investment, and not just the predi-

cate acts, because the essence of § 1962(a) is the investment of racketeering income. *Id.* The Wolff Defendants argue that FIAC has not alleged, and cannot demonstrate, that the Wolff Defendants' investment of racketeering income in the Enterprise "proximately caused" injury to FIAC's business. I find the Wolff Defendants' arguments to be without merit.

FIAC has satisfied § 1962(a) by alleging that (1) the Wolff Defendants, with others, acted as an enterprise associated-in-fact, (2) each of the Wolff Defendants caused money and property to be obtained from FIAC through a pattern of racketeering activity, and (3) the money and property were used, at least in part, to fund the alleged Enterprise. (*See* Compl. ¶¶ 1–3, 30–60). Additionally, the cases cited by the Wolff Defendants in support of their arguments are inapposite. In those cases, the plaintiffs were not the intended targets of the racketeering activity. The courts, therefore, held that the plaintiffs had failed to establish a link between defendant's RICO actions and plaintiff's injury. *See, e.g., Holmes v. Securities Investor Prot. Corp.,* 503 U.S. 258, 264–68, 112 S.Ct. 1311, 1315–18, 117 L.Ed.2d 532 (1992); *In re American Express Co. Shareholder Litig.,* 39 F.3d 395 (2d Cir.1994). Here, however, FIAC was an intended target of the Wolff Defendants' RICO actions. Thus, FIAC has sufficiently alleged that its injuries were proximately caused by the Wolff Defendants' violation of § 1962(a).

### b) *§ 1962(b) Claim*

The Wolff Defendants next argue that FIAC has not alleged, and cannot demonstrate, injury to its business proximately caused by the Wolff Defendants' "acquisition" of an interest in an enterprise as required by § 1962(b). They assert that FIAC's § 1962(b) claim is insufficient because the complaint only alleges that the Wolff Defendants acquired an interest in FIAC's "property." The Wolff Defendants argue that § 1962(b) requires defendants to acquire an interest in a RICO enterprise, and that "property" cannot constitute a RICO enterprise. *Creed Taylor, Inc. v. CBS, Inc.,* 718 F.Supp. 1171, 1178 (S.D.N.Y.1989).

To state a claim under § 1962(b), a plaintiff must allege that "(1) [it suffered] an injury (2) resulting from the acquisition or control of an enterprise (3) acquired through a pattern of racketeering activity." *Constellation Bank,* 1995 WL 42285, at *4. Allegations that the interest or control was acquired by arranging financing for the continued operation of the enterprise satisfies this requirement. *Id.* Although the Wolff Defendants correctly state that FIAC alleges the acquisition of its "property" in paragraph 99 of the complaint, this is irrelevant. As I stated previously, when examining the sufficiency of FIAC's RICO claim I must not look at isolated paragraphs but rather at the complaint as a whole. The complaint, rather than any specific paragraph of the complaint, does allege that each defendant shared in arranging for financing for the Enterprise. (*See generally* Compl. ¶¶ 29–66). Thus, the complaint adequately pleads that each of the defendants "acquired or maintained, directly or indirectly, an interest in or control of" the Enterprise. FIAC has, therefore, sufficiently pleaded a violation of § 1962(b).

### c) *§ 1962(c) Claim*

To establish a civil RICO claim for a violation of § 1962(c) a plaintiff must "show that an injury was caused by defendant's '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Constellation Bank,* 1995 WL 42285, at *4 (quoting *Cullen v. Margiotta,* 811 F.2d 698, 712–13 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987)). The Wolff Defendants claim that FIAC's complaint fails to make this showing for two reasons. First, they assert that FIAC has failed to allege that each of the Wolff Defendants participated in two predicate acts and that the predicate acts were not alleged with the particularity required by 9(b). I have already considered and rejected these claims and so there is no need to deal with them again here. Second, the Wolff Defendants allege that FIAC has failed to show that the Enterprise and the persons committing the RICO acts are separate entities. This claim is also rejected.

The Second Circuit has held that a solitary entity cannot, as a matter of law, simultaneously constitute both the RICO person whose conduct is prohibited and the entire RICO enterprise whose affairs are impacted by the RICO person. *Riverwoods Chappaqua v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994); *Cullen*, 811 F.2d at 729. Likewise, the RICO enterprise cannot consist merely of a corporation associated with its employees or agents carrying on the regular affairs of the corporation. *Riverwoods*, 30 F.3d at 344. Nevertheless, an entity can be both the RICO person and one of a number of the members of the RICO enterprise. *Cullen*, 811 F.2d at 729–30.

The Wolff Defendants argue that FIAC has failed to allege that there is a separate RICO person and enterprise. They claim that the Enterprise here consists solely of CIC and its employees or its agents. This argument, however, is incorrect. FIAC has properly pleaded a separate RICO enterprise and person. The complaint alleges that the RICO enterprise in this case consists of the named defendants and other entities—not named as defendants but nevertheless mentioned in the complaint as co-conspirators—associated-in-fact. (Compl.¶ 1). While there is some overlap between the Enterprise and the defendants, this is not dispositive. *Cullen*, 811 F.2d at 729–30. Also, although CIC was the alleged vehicle through which the Enterprise conducted its racketeering activities, this does not mean it must also be considered the RICO enterprise. FIAC has pleaded an enterprise separate and distinct from CIC. (Compl.¶ 1). Thus, FIAC has not failed to plead a separate RICO enterprise and person and has properly pleaded a violation of § 1962(c).

### d) § 1962(d) Claim

To state a claim under § 1962(d) a plaintiff must plead as to each alleged co-conspirator (1) an agreement to join the conspiracy, (2) what that co-conspirator did in furtherance of the conspiracy, and (3) that the co-conspirator knowingly participated in the same. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990); *United States v. Ruggiero*, 726 F.2d 913, 923

(2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). A defendant's "agreement" may be manifested by an assent "to commit predicate acts of racketeering," *Constellation Bank*, 1995 WL 42285, at *4 (quoting *Trautz v. Weisman*, 819 F.Supp. 282, 289 (S.D.N.Y.1993)), and can also be inferred from circumstantial evidence of the defendant's status in the enterprise or knowledge of the wrongdoing. *Morrow v. Black*, 742 F.Supp. 1199, 1208 (E.D.N.Y.1990). In addition, it is important to note that, notwithstanding the Wolff Defendants' claims to the contrary, the pleading of conspiracy—apart from the underlying predicate acts—is measured under the standards of Fed.R.Civ.P. 8(a), and not the stricter standards of 9(b). *Hecht*, 897 F.2d at 26 n. 4.

FIAC meets these standards. The complaint alleges that (1) each of the defendants agreed to join the conspiracy to defraud FIAC and others (by showing that each defendant "manifested . . . an assent 'to commit predicate acts of racketeering and by showing the defendant's status in the [E]nterprise, (2) that each of the defendants committed acts of mail and wire fraud in furtherance of the conspiracy, and (3) that the defendants knowingly participated in the same. (*See* Compl. ¶¶ 2–4, 7–21, 49–59, 99–101, 103–04, & 107). Thus, FIAC has adequately pleaded a claim under § 1962(d).

### III. *Pendent State Law Claims*

In addition to the RICO claim, FIAC alleges nine separate state law claims against the defendants. The Wolff Defendants argue that FIAC has failed to sufficiently plead any of these claims. While the Wolff Defendants offer no new arguments to substantiate this claim, they do reiterate some of the same grounds they offered in support of their motion to dismiss the RICO count. Hence, for the same reasons I discussed in relation to the RICO count, the state law claims are dismissed as to all defendants except Wolff, CIC, Thomas Tyndall, and Mark Karasick. The same facts and allegations that supported FIAC's RICO claim against these four defendants, however, are also sufficient to allow FIAC's state law claims to survive the motion to dismiss.

## IV. Motion to Disqualify FIAC's Counsel.

■ The Wolff Defendants have also moved to disqualify Patterson, Belknap, Webb & Tyler LLP ("PBW & T") as FIAC's counsel. PBW & T began representing FIAC approximately two weeks prior to the closing of the first deal between FIAC and CIC. (Gianninoto Aff. at ¶¶ 4–5). At that time, PBW & T assumed an active role in the review of the loan and guaranty documents used to consummate the deal. (*Id.* at 4–7). The Wolff Defendants allege that because of this representation, PBW & T has professional interests in this action that directly conflict with the interests of FIAC. Specifically, the Wolff Defendants argue that FIAC may have a malpractice claim against PBW & T based on PBW & T's review of the closing documents. The Wolff Defendants also argue that since the defendants may have a claim for contribution against PBW & T, PBW & T will not be able to fairly and adequately represent FIAC in this lawsuit. I disagree with both arguments.

■ Disqualification of a party's chosen counsel is a "drastic measure." *Motown Record Corp. v. Mary Jane Girls, Inc.,* 118 F.R.D. 35, 38 (S.D.N.Y.1987). Motions to disqualify opposing counsel are viewed with disfavor because they impinge on a party's right to employ the counsel of its choice. *Stratavest Ltd. v. Rogers,* 903 F.Supp. 663, 666 (S.D.N.Y.1995). Additionally, the "drastic remedy" of disqualification is subject to strict scrutiny because of the strong potential to "stall and derail the proceedings, redounding to the strategic advantage of one party over another." *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.,* 69 N.Y.2d 437, 515 N.Y.S.2d 735, 738, 508 N.E.2d 647, 650 (1987). Hence, the moving party bears the "heavy burden [in] proving [the] facts required for disqualification." *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 794 (2d Cir.1983). The Wolff Defendants' motion to disqualify fails to satisfy this heavy burden.

PBW & T's involvement with the FIAC–CIC deals was limited to the review of the loan agreements and guaranty. (Gianninoto Aff. at ¶¶ 4–8). PBW & T was not responsible for ensuring that defendants would not violate the RICO laws or commit fraud. The crux of FIAC's complaint is that the defendants *intentionally* defrauded them. The Wolff Defendants have alleged no facts that would demonstrate any negligence on the part of PBW & T, much less satisfy the heavy burden required in a motion to disqualify.

■ The Wolff Defendants' argument that they might assert affirmative defenses alleging that PBW & T was somehow negligent or might assert a third-party claim against PBW & T for contribution is also unavailing. First of all, the Wolff Defendants have offered *no* facts to support their allegation that PBW & T's actions may have somehow contributed to FIAC's losses in this case. Moreover, except for one of the state law claims, all of FIAC's claims allege intentional conduct on the part of the defendants, and contribution is generally not available to "any tortfeasor who has intentionally caused the harm." *See Anderson v. Local Union No. 3, Int'l Bhd. of Elec. Workers,* 582 F.Supp. 627, 632 (S.D.N.Y.), *aff'd,* 751 F.2d 546, 549 (2d Cir.1984). Thus, the Wolff Defendants have failed to demonstrate that the "drastic remedy" of disqualifying FIAC's chosen counsel is warranted and their motion to do so is therefore denied.

### CONCLUSION

For the foregoing reasons, the motion to dismiss is granted as to Slovie Wolff, Rachell Skydell, Manhattan Management, Inc., Chadwick Funding Company and Burham Corp., N.V. and denied as to Emanuel Wolff, CIC, Mark Karasick and Thomas Tyndall. In addition, the motion to disqualify Patterson, Belknap, Webb & Tyler LLP as counsel for FIAC is denied.

The parties are ordered to appear for a status conference on March 28, 1997, at 10:00 a.m.

SO ORDERED.