**Richard A. LIPPE, Archie R. Dykes and John J. Robbins, as Trustees for Keene Creditors Trust, Plaintiffs,**

v.

**BAIRNCO CORPORATION; Kaydon Corporation; the Genlyte Group, Inc.; Glenn W. Bailey; Kasco Corporation; Shielding Systems Corporation; Arlon, Inc.; Luke E. Fichthorn, III; Richard A. Shantz; Gerald F. Mahoney; Eugene Cafiero; Howard A. Mileaf; Fred Hel-**

---

ler; Frank Metzger; Eugene R. Anderson; Edward C. Utz; Kidder, Peabody & Co.; Frederick P. Harvey; Anderson Kill Olick & Oshinsky, P.C.; Debevoise & Plimpton; and Arthur Andersen & Co., Defendants.

No. 96 CIV. 7600 DC.

United States District Court, S.D. New York.

Feb. 6, 1998.

Levy Phillips & Konigsberg, LLP by Stanley J. Levy, New York City, Budd Larner

Gross Rosenbaum Greenberg & Sade, P.C. by David R. Gross, Short Hills, NJ, for Plaintiffs.

Brown & Wood LLP by James D. Zirin, James J. Sabella, Laurel J. Southworth, New York City, for Arthur Anderson, LLP.

Wachtell Lipton Rosen & Katz by Theodore Gewertz, Seth Gardner, New York City, for Anderson Kill Olick & Oshinsky, P.C.

Cleary Gottlieb Steen & Hamilton by Evan Davis, Mitchell Lowenthal, Astrid B. Gloade, Tad Stahnke (not yet admitted), New York City, for Debevoise & Plimpton.

Kaye Scholer Fierman Hays & Handler, LLP by Randolph S. Sherman, Richard A. De Sevo, Beth Rodgers, New York City, for Kidder, Peabody & Company.

Michael Mitchell by Michael Mitchell, New York City, for Eugene R. Anderson.

Abowitz, Rhodes & Dahnke, P.C. by Murray E. Abowitz, Oklahoma City, OK, for Glenn W. Bailey.

McCarter & English by Andrew T. Berry, Charles F. Rysavy, Newark, NJ, for Genlyte, Fred Heller, Frank Metzger.

Schulte Roth & Zabel, LLP by Irwin Sugarman, Brooks R. Burdette, New York City for Kaydon, Richard Shantz.

Friedman & Kaplan by Edward Friedman, New York City, for Eugene Cafiero, Estate of Frederick Harvey, Gerald Mahoney, Howard Mileaf.

Edward C. Utz, Westport, CT, Defendant Pro se.

### *OPINION*

CHIN, District Judge.

In 1968, Keene Corporation ("Keene") entered the asbestos products business by acquiring a company that manufactured and distributed insulation and other materials containing asbestos. The acquisition proved to be a profitable one at first, as Keene's sales of asbestos products soared. In time, however, the decision to purchase the company proved to be disastrous.

In the late 1970's, asbestos-related illnesses started to appear, and claims by individu-

als exposed to asbestos were filed against Keene in rapidly increasing numbers. By December 1989, more than 70,000 asbestos claims were pending against Keene. By December 1993, when it filed for bankruptcy, Keene was a defendant in approximately 101,000 lawsuits involving asbestos-related property damage, personal injury, and wrongful death claims.

During the 1980's, as the number of asbestos claims against it continued to rise, Keene engaged in a series of transactions. First, it created a holding company. Second, it transferred five profitable divisions to newly-created subsidiaries of the holding company. These transfers are at the heart of this lawsuit.

Plaintiffs, trustees of Keene Creditors Trust, allege that the transfers were fraudulent conveyances made solely for the purpose of placing hundreds of millions of dollars in assets beyond the reach of Keene's creditors. Plaintiffs purport to sue on behalf of Keene's estate as well as present and future victims of asbestos exposure.

All but one of the twenty-one defendants in the case moved to dismiss and/or for summary judgment. Twelve motions are pending. I now decide four motions to dismiss submitted on behalf of professional defendants Anderson, Kill, Olick, & Oshinsky, P.C. ("AKOO"), Arthur Andersen, LLP ("AA"), Debevoise & Plimpton ("Debevoise"), and

Kidder, Peabody & Co. ("Kidder") under Fed.R.Civ.P. 12(b)(6) and 9(b).

For the reasons set forth below, the four motions are granted.

## BACKGROUND

### A. Factual Background

Keene was founded in 1967 and filed for bankruptcy in December 1993 under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq.

In 1968, Keene acquired Baldwin–Ehret–Hill ("BEH"), which was engaged in the business of manufacturing products containing asbestos. As a result of its BEH business, Keene became a primary target in asbestos-related litigation. The first suits on behalf of asbestos exposure victims were filed in the 1970's. The number of asbestos-related personal injury and property damage claims increased steadily throughout the 1980's and into the 1990's.

In 1981, Bairnco Corporation ("Bairnco") was formed as a holding company for all of Keene's stock. In the same year, Keene then became a wholly-owned subsidiary of Bairnco. In 1990, Keene was spun off from Bairnco. After Bairnco's formation, and during the ensuing years, certain transactions between Keene and five affiliated entities occurred (referred to collectively as the "Transactions"). The Transactions between Keene and the five Bairnco subsidiaries were as follows:

| Subsidiary | Keene Assets Acquired | Consideration | Year |
|---|---|---|---|
| Kaydon | Industrial Bearings & Fittings Div. | $65 million | 1983 |
| Genlyte | Lighting Div. | $52.5 million | 1984 |
| Kasco | Cutting Services Div. | $9 million | 1986 |
| Shielding | Electromagnetic & Shielding Div. | $49.5 million | 1987–88 |
| Arlon | Laminate & Coded Prods. Div. | $48 million | 1989 |

See In re Keene Corp., 164 B.R. 844, 847 (S.D.N.Y.1994) (noting that the purchase price in the Arlon transaction included $44,-000,000 in cash and the assumption of $4,000,000 of existing indebtedness).

Fundamentally at issue in this case is the propriety of the Transactions. Plaintiffs al-

lege that Keene's asset sales to other Bairnco subsidiaries were fraudulent conveyances having the purpose and effect of placing hundreds of millions of dollars in assets beyond the reach of Keene's creditors. Plaintiffs therefore claim that Keene's creditors are

entitled to look to the assets of the sold businesses to satisfy their claims.

The twenty-one defendants named in this action fall into three groups: (1) six corporate defendants, including both Bairnco and the companies that bought businesses from Keene and now conduct those businesses (current subsidiaries Arlon, Kasco, and Shielding, and then-subsidiaries Kaydon and Genlyte, which are now independent companies unaffiliated with either Keene or Bairnco); (2) eleven individual defendants who served as directors or officers of Keene or one or more of the other corporate defendants; and (3) the four professional defendants discussed in this decision.

## B. *Procedural Background*

In 1995, the Official Committee of Unsecured Creditors of Keene (the "Committee") filed the original complaint in this case. Plaintiffs Richard A. Lippe, Archie R. Dykes, and John Robbins are the trustees for the Keene Creditors Trust ("Trust") that was created by order of the Bankruptcy Court on June 12, 1996 and a consensual Plan of Reorganization. The Plan transferred from the Committee to the Trust whatever right the Committee had to prosecute this action.

By order dated April 10, 1997, I withdrew the reference with respect to the adversary proceeding begun in 1995 by the Committee, and on April 24, 1997, the parties stipulated to amendments to the 1995 complaint, including the substitution of the trustees of the Trust as plaintiffs in place of the Committee.

On June 30, 1997, a stipulated case management order in this action was entered. In that order: (1) plaintiffs agreed to serve certain supplemental responses on defendants regarding statute of limitations discovery; (2) the parties agreed on a briefing schedule for any dispositive motions the defendants wished to file; and (3) the Court stayed all other discovery. Twelve motions to dismiss and/or threshold summary judgment motions were fully submitted as of December 15, 1997.

On January 9, 1998, I held a status conference and decided to stay discovery for at least an additional 60 days so that I could decide some, if not all, of the pending motions before the case proceeded further.

## C. *Plaintiffs' Allegations*

In their amended complaint, plaintiffs allege fifteen causes of action—all centered around their claim that the conveyances from 1982 to 1989 were either actually or constructively fraudulent. (*See* Compl. ¶ 4; Pls. Opp. at 39–42). Only two of the fifteen causes of action still implicate the professional defendants: (1) Count XI (aiding and abetting breaches of fiduciary duties) (Compl.¶¶ 260–73); and (2) Count XV (aiding and abetting violations of RICO) (Compl.¶¶ 329–32, 335).[1] In this decision, I discuss and decide only those issues that are relevant to the professional defendants.

Plaintiffs' amended complaint sets forth a number of factual allegations regarding each of the professional defendants, facts that I accept as true for purposes of this motion. These facts are as follows:

### 1. *AKOO*

AKOO, a New York based law firm, served as Keene's outside general counsel at times relevant to plaintiffs' action. (Compl.¶ 32). By 1980, AKOO expressed doubt regarding Keene's ability to manage anticipated asbestos judgments and concern over the need to publicly disclose Keene's potential financial difficulties as a result thereof. (Compl.¶¶ 57, 58, 60). At the same time, Keene began searching for a way to isolate its assets from what it viewed as the "tyranny of asbestos liability." (Compl.¶ 65).

In 1981, Keene decided to implement a "holding company strategy" by forming Bairnco as a holding company for Keene. (Compl.¶ 73). AKOO prepared the legal documents to form Bairnco. Shortly thereafter, also in 1981, Keene was merged into another subsidiary such that it became a wholly

1. Count XII of the amended complaint alleges aiding and abetting violations of New York's Business Corporation Law § 720(a) against the professional defendants. (Compl.¶ 277). Realizing, I presume, that this claim lacked a legal basis, plaintiffs advised the Court in their opposition that they were abandoning it. (Pls. Opp. at 43).

owned subsidiary of Bairnco. Again, AKOO prepared the legal documents to effect the transaction. (Compl.¶ 75). Bairnco's 1981 S–14, drafted by AKOO, stated that the "new structural format may serve to isolate any new acquisitions from any of Keene's current liabilities" including its asbestos liabilities. (Compl.¶ 79).

From 1981 through at least 1988, Keene and Bairnco repeatedly disseminated consolidated financial disclosure documents and statements representing that Keene's management and counsel believed that there would not be a material adverse effect upon Keene's financial position resulting from the disposition of existing and as yet unasserted asbestos cases. The financial disclosures also stated that Bairnco's management believed that the disposition of existing and potential asbestos cases would not have a material effect on its financial position. AKOO drafted the language in the financial disclosures. (Compl.¶¶ 146–49).

### 2. *Debevoise*

Debevoise is a New York based law firm that rendered legal advice to Keene and Bairnco at times relevant to this action. (Compl.¶ 31). As noted earlier, in 1980, Keene began searching for a way to isolate its assets from its asbestos liability. One approach Keene contemplated to shelter assets from potential asbestos creditors was to spin off assets to its shareholders as dividends. (Compl.¶ 64).

Debevoise was retained in 1980 to act as "special counsel" to consider legal issues that might arise if Keene went forward with this approach. (Compl.¶ 65). Debevoise advised Keene that if it transferred a Keene division without any consideration, there was a risk that Keene shareholders would be required to disgorge the assets, if it was later determined that Keene was insolvent at the time of the spinoff or that Keene intended to defraud, hinder, or delay its creditors. (Compl.¶ 66). Keene decided not to proceed with this spinoff approach. (Compl.¶ 67). In 1981, when Bairnco was formed, Debevoise became its general counsel. (Compl.¶ 73). Thereafter, Debevoise assisted in structuring Keene transfers to ensure that Keene received consideration for the transfers. (Compl.¶ 76).

Bairnco's officers created a "pretense" of new acquisitions by papering their dealings with Debevoise to make things appear as if Bairnco was not intended as a device to move Keene's existing assets away from Keene's creditors. (Compl.¶ 81). When Debevoise was asked to provide a tax opinion concerning Bairnco's formation and subsequent merger with Keene, it was advised by Keene in a letter dated April 30, 1981 that the holding structure would facilitate the acquisition of new companies and management's ability to organize and administer the newly acquired companies more effectively. (Compl.¶ 81).

As early as 1982, however, Debevoise became aware that Bairnco would also be used to transfer existing Keene divisions away from Keene and its creditors to new Bairnco subsidiaries. (Compl.¶ 32). On the basis of the Kaydon transaction and each of the subsequent Bairnco acquisitions, therefore, plaintiffs claim that Debevoise knew Bairnco was being used to acquire Keene's assets to place them beyond the reach of Keene's asbestos creditors. (Compl.¶ 83).

### 3. *AA*

AA is a "worldwide accounting firm" that served as Keene's and Bairnco's auditors during the period relevant to this action. (Compl.¶ 30).

By 1980, AA (like AKOO) expressed doubt as to Keene's ability to manage anticipated asbestos judgments and concern over the need to publicly disclose Keene's potential financial difficulties as a result thereof. Indeed, in 1980, AA considered issuing a qualified audit opinion for Keene because of its potential liability. (Compl.¶¶ 57, 59, 60).

As stated earlier, from 1981 to 1988, Keene and Bairnco repeatedly disseminated consolidated financial disclosure documents and statements that represented that Keene's and Bairnco's management and counsel believed that there would not be a material adverse effect upon either company's financial position resulting from the disposition of existing and possible unasserted asbestos

cases. Arthur Andersen certified each of Bairnco's Annual Reports for the years 1981 to 1988 containing this language. (Compl. ¶ 149).

### 4. *Kidder*

The amended complaint alleges that Kidder provided investment banking services to Keene at relevant times in this action, including issuing "fairness opinions" concerning the Transactions. (Compl. ¶ 28). Bairnco obtained fairness opinions from Kidder for each of the five Transactions at issue in this case. (Compl. ¶ 85). Bairnco sought these opinions to justify the amount of consideration it paid for the assets it acquired in the Transactions. (Compl. ¶ 85).

Plaintiffs find particularly suspect the fact that Kidder issued a fairness opinion in the Kaydon transaction after the purchase price for the transaction was set and the closing on the sale occurred. (Compl. ¶ 88). Kidder's Kaydon opinion stated that the $65 million purchase price, received by Keene for the sale, represented fair value for the transferred assets. (Compl. ¶ 88). Plaintiffs allege that the opinion "severely understated" the fair value of the assets transferred and that Kidder, therefore, issued a false and misleading opinion intentionally, knowingly, or recklessly. (Compl. ¶¶ 88–93). In addition, plaintiffs maintain, Kidder commenced a "pattern of covering the tracks of, and thereby substantially assisting, Bairnco's officers and directors in making a series of asset divestitures intended to hinder the ability of asbestos creditors to recover on judgments." (Compl. ¶ 94).

After establishing the purchase price for the Genlyte transaction, Bairnco again called upon Kidder to issue a fairness opinion. Again, Kidder concluded that the consideration, here consisting of $52 million, was fair. (Compl. ¶¶ 109–11). The same holds true for the Kasco transaction and the $9 million consideration for the transaction—Kidder issued a fairness opinion after the transaction stating that it was fair. (Compl. ¶ 122). Similar facts are alleged with respect to the Shielding transaction (Compl. ¶¶ 131, 137–38) and the Arlon transaction (Compl. ¶ 144).

### D. *Causes of Action*

Based on these facts, plaintiffs allege two causes of action against the professional defendants: first, that they knowingly and substantially assisted in the breaches of fiduciary duty by the individual defendants (Compl. ¶¶ 260–63 (AKOO); ¶ 263 (Debevoise); ¶¶ 268–71(AA); ¶¶ 264–67 (Kidder)); and second, that in knowingly, intentionally, or recklessly rendering advice, preparing false and misleading disclosures, and/or otherwise participating in financial transactions in interstate commerce designed to defraud thousands of Keene creditors, the professional defendants furthered the racketeering objective of a RICO enterprise and aided and abetted individual defendants in violating 18 U.S.C. § 1962. (Compl. ¶¶ 329–32).

### DISCUSSION

### A. *Motion to Dismiss Standard*

In reviewing a motion to dismiss, I must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of plaintiffs. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). A complaint may not be dismissed under Rule 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In other words, the issue before the Court on these four motions to dismiss "is not whether ... plaintiff[s] will ultimately prevail but whether the claimant[s are] entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996) (citation omitted).

The professional defendants move to dismiss both causes of action—aiding and abetting breach of fiduciary duty and aiding and abetting RICO violations—asserted against them. In support of their motions, the professional defendants assert a host of defenses. I address only the following as to the breach of fiduciary duty claim: (1) standing; and (2) liability for aiding and abetting a fraudulent conveyance. I address only the

following as to the RICO claim: (1) standing; (2) liability for aiding and abetting RICO violations; and (3) liability under 18 U.S.C. §§ 1962(c) & (d).

## B. *Breach of Fiduciary Duty*

### 1. *Standing*

Standing is a constitutional as well as jurisdictional requirement. The Constitution limits the judicial power of the federal courts to deciding "cases or controversies." U.S. Const. art. III, § 2. The doctrine of standing comes directly from this constitutional provision. To have standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct [that is] likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). If a plaintiff lacks standing to bring a claim or action, it must be dismissed pursuant to Fed.R.Civ.P. 12(b):

"Under the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092–93 (2d Cir.1995); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir.1989) (claims may be asserted by bankruptcy trustee depending on analysis of state law and whether claims are "property of debtor"). Moreover, "[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Wagoner*, 944 F.2d at 118 (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434, 92 S.Ct. 1678, 1688, 32 L.Ed.2d 195 (1972)); *see also Barnes v. Schatzkin*, 215 A.D. 10, 212 N.Y.S. 536 (1st Dep't 1925), *aff'd*, 242 N.Y. 555, 152 N.E. 424 (1926).

■ In considering whether a bankruptcy trustee has standing to sue, then, it is important to determine if the claims belong to the debtor or to the debtor's creditors or to both.

Where claims belong solely to the creditors and involve misconduct on the part of the debtor against creditors, *i.e.*, "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors." *Wagoner*, 944 F.2d at 118.

The bankruptcy trustee, therefore, only has standing for causes of action where there is "damage to the *corporation*, apart from that done to the [creditors]." *Id.* at 118–19 (emphasis in original). Indeed, "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." *Id.* at 120.

The Second Circuit recently addressed this standing issue in *In re Mediators, Inc.*, 105 F.3d 822 (2d Cir.1997). In *Mediators*, the Second Circuit affirmed the granting of a motion to dismiss holding that a creditor's committee, suing in the shoes of a debtor, had no standing to bring claims against professional defendants alleged to have aided and abetted the debtor's breach of fiduciary duties. 105 F.3d at 825–27. Relying on *Mediators* (and predecessor cases), the professional defendants argue that plaintiffs have no standing to assert the aiding and abetting breach of fiduciary duty claim in this case.

■ I agree. *Mediators* requires dismissal of plaintiffs' aiding and abetting fiduciary duty claim against all four professional defendants. Where, as here, third party professional defendants are charged with aiding and abetting a corporation in a scheme to defraud the company's creditors, the claim "belong[s] to the creditors *qua* creditors," *see id.* at 826 (emphasis in original), and cannot be asserted by the company, its trustee in bankruptcy, a committee of unsecured creditors, or anyone else standing in the shoes of the debtor corporation.

Plaintiffs set forth two basic arguments in response to defendants' standing argument: (1) *Mediators* and its predecessor cases are distinguishable (Pls. Opp. at 97–98); and (2) application of *Mediators* would work a "great injustice" in this case because Keene's credi-

tors are enjoined by the Bankruptcy Court from pursuing their own lawsuits in favor of this action. (Pls. Opp. at 107).

■ Plaintiffs claim this case is distinguishable from *Mediators* because Keene is a wholly-owned subsidiary of Bairnco that was not dominated by an "individual sole shareholder/decision-maker, as was the debtor in *Mediators,* so that wrongful acts of Keene's officers and directors should not be imputed to Keene as the corporation." (Pls. Opp. at 97).

Limited support for plaintiffs argument can be found in *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.,* 212 B.R. 34 (S.D.N.Y.1997). Judge Knapp held in that case that the *Wagoner* [or *Mediators* ] rule is not limited to a situation where the individual committing the wrongdoing is a sole shareholder, but "only applies where all relevant shareholders and/or decisionmakers are involved in the fraud." *Id.* at 36. Hence, Judge Knapp held that unless the complaint "actually alleges the existence of an innocent member of ... management who would have been able to prevent the fraud had he known about it," *id.,* the fraud is imputed to the corporation and the trustee therefore would not have standing.

Plaintiffs allege in their opposition papers for the first time that "at both the Keene level and the Bairnco level there are multiple decision makers involved, not all of whom were involved in the wrongdoing." (Pls. Opp. at 103–04). Thus, claim plaintiffs, "unity of person between corporation and defendants" does not exist here as it did in *Mediators* and *Wagoner.* (Pls. Opp. at 104).

Plaintiffs' amended complaint and opposition memorandum do not allege, however, that innocent members of management would have been able to prevent the fraud had they known about it. Rather, a number of key officers and directors of Keene have been named as defendants and the amended complaint alleges in great detail that Keene fully designed, consented to, and participated in the Transactions. The amended complaint contains a number of unequivocal references to Keene's acquiescence in and encouragement of the underlying conduct at issue. (*See* Kidder Reply at 1–4) (outlining the numerous allegations in the amended complaint that can only be construed as alleging a unity of purpose among Keene, Bairnco, and the corporate insiders of both companies).

Even accepting as true all the factual allegations against the professional defendants, plaintiffs' amended complaint still alleges that it was Keene and its officers that masterminded, orchestrated, and engaged in the alleged misconduct. Indeed, Keene's decision makers—the individual director and officer defendants named in this action as well as Bairnco and its subsidiaries—are charged in the amended complaint with causing Keene to wrongfully divest as well as divert its assets for inadequate consideration in breach of their fiduciary duties to the corporation. (*See* Compl. ¶¶ 1, 2, 18, 50, 51, 52, 54, 58, 64, 65, 67, 68, 69, 70, 73, 76, 79, 81, 82, 84, 93, 111, 118, 136, 146, 150, 158, 171). Hence, even if the clarification noted in *Wechsler* is valid, it does not apply here, for there is a sufficient "unity" between Keene and defendants to implicate Keene in the alleged wrongdoing.

Plaintiffs also argue that applying *Mediators* would be unjust because of the Bankruptcy Court's injunction. This argument also lacks merit. Whatever its terms, the injunction cannot confer standing on a bankruptcy trustee to assert claims belonging to individual creditors where no standing exists under state law.

The aiding and abetting breach of fiduciary duty claim, therefore, is dismissed for lack of standing.

### 2. *Aiding and Abetting a Fraudulent Conveyance*

■ Even assuming plaintiffs had standing to assert this claim against the professional defendants, the aiding and abetting a breach of fiduciary duty claim would also fail because there is no liability against nontransferees for a fraudulent conveyance in the circumstances of this case, and plaintiffs' aiding and abetting a breach of fiduciary duty claim is in fact an aiding and abetting a fraudulent conveyance claim. As plaintiffs allege in the very first sentence of their 119–page amended complaint: "This action is

brought to remedy a series of textbook fraudulent conveyances the purpose and effect of which have been to place hundreds of millions of dollars in assets beyond the reach of Keene's creditors." (*See also* Pls. Opp. at 2 (The "purpose of this action is to undo [the purportedly fraudulent] transactions."); Pls. Opp. at 5 ("the officers and directors of Keene, with the assistance of its lawyers and accountants, engaged in a scheme to place Keene's assets out of the reach of Keene's creditors . . . .")).

■ Under New York law, a non-transferee may not be held liable for a fraudulent transfer unless it has dominion and control over the transferred assets or unless it benefits in some way from the conveyance. *See FDIC v. Porco*, 75 N.Y.2d 840, 552 N.Y.S.2d 910, 911–12, 552 N.E.2d 158, 159–60 (Ct. App.1990). Plaintiffs do not allege that the professional defendants, clearly non-transferees in this case, exercised dominion and control over the transferred assets nor do they allege that the professional defendants benefitted from the conveyances at issue. Therefore, the professional defendants are not liable as aiders and abettors for the alleged fraudulent transfers.

Nowhere in their opposition do plaintiffs discuss or even cite *Porco*, which is dispositive of this issue. The cases cited by plaintiffs to support the contention that the fraudulent conveyance claim can give rise to an aiding and abetting breach of fiduciary duty claim are inapposite. (*See* Pls. Opp. at 108 n. 7). Accordingly, the aiding and abetting breach of fiduciary duty claim against the professional defendants is dismissed for this reason as well.

### C. *RICO*

#### 1. *Standing*

■ Plaintiffs do not allege a different set of facts in support of the aiding and abetting a RICO violation claim than the facts they allege to support their aiding and abetting breach of fiduciary duty claim. Thus, for the reasons discussed above, the Trust also lacks standing to assert this claim.

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir.1995) provides direct support for this conclusion. In *Hirsch,* the district court dismissed, *inter alia*, a bankruptcy trustee's RICO claim, predicated on mail fraud, against the bankrupt's former attorneys and accountants for lack of standing. The district court reasoned that the claims belonged to individual creditors, not the estate. The Second Circuit affirmed, holding that: (1) to the extent the RICO claims were premised upon distributing misleading information to investor creditors, the claims could only be asserted by such investors; and (2) to the extent the RICO claims were premised upon the theory that the bankrupt suffered injuries, the claims could not be asserted by the trustee because "a corporation may not assert RICO claims against its agents for committing illegal actions 'ostensibly on the corporation's behalf' that ultimately redound to its disadvantage." *Id.* at 1094 (citing *In re American Express Co. Shareholder Litigation,* 39 F.3d 395, 400 (2d Cir.1994)).

Again, plaintiffs claim that standing exists because Keene is a victim of the conduct that allegedly violates RICO. (*See* Pls. Opp. at 122–24). The amended complaint's allegations, as well as the reasonable inferences that flow from those allegations, contradict this argument. Given the amended complaint's extensive allegations of Keene's awareness of and participation in the conduct upon which these fraudulent conveyance claims are based, there is no set of facts that plaintiffs could prove that would show that Keene was a victim without simultaneously undermining the core allegations of the amended complaint.

For the same reasons that plaintiffs lack standing to pursue their aiding and abetting breach of fiduciary duty claim, they lack standing to assert the RICO aiding and abetting claim, and this claim is therefore dismissed.

#### 2. *Civil Liability for Aiding and Abetting a RICO Violation*

■ Plaintiffs and professional defendants discuss at length in their moving papers whether, in the wake of the Supreme Court's ruling in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N .A.,* 511

U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), a private cause of action exists for civil claims of aiding and abetting RICO violations. Several judges in this Court have held that *Central Bank* forecloses aiding and abetting liability for a civil RICO violation. I agree with their conclusions and their reasoning, and I therefore hold that a private cause of action does not exist for aiding and abetting a RICO violation because the text of 18 U.S.C. § 1962 does not reveal a congressional intent to impose civil liability for such conduct. *See Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison,* 955 F.Supp. 248, 255–57 (S.D.N.Y.1997) (Sprizzo, J.); *Ross v. Patrusky, Mintz & Semel,* No. 90 Civ. 1356, 1997 WL 214957, at *11 (S.D.N.Y. Apr. 29, 1997) (Kram, J.); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071, 1088–89 (S.D.N.Y.1996) (Knapp, J.); *Rosenheck v. Rieber,* 932 F.Supp. 626, 627 n. 1 (S.D.N.Y.1996) (Rakoff, J.); *Department of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.),* 924 F.Supp. 449, 475–78 (S.D.N.Y. 1996) (Mukasey, J.); *Sundial Int'l Fund Ltd. v. Delta Consultants, Inc.,* 923 F.Supp. 38, 41 (S.D.N.Y.1996) (Griesa, J.); *see also Lutin v. New Jersey Steel Corp.,* Nos. 93 Civ. 6612 & 95 Civ. 4965, 1996 WL 636037, *9 (S.D.N.Y. Nov. 1, 1996) (Schwartz, J.), *aff'd on other grounds without published opinion,* No. 96 Civ. 9664, 1997 WL 447005 (2d Cir. Aug. 7, 1997); Edward Brodsky, *Civil Aiding and Abetting Under RICO,* N.Y.L.J., Dec. 10, 1997, at 4; Carrie E. Goodwin, *Central Bank v. First Interstate Bank: Not Just the End of Aiding and Abetting Under Section 10(b),* 52 Wash. & Lee L.Rev. 1387 (1995); Jed S. Rakoff, *Aiding and Abetting Under Civil Rico,* N.Y.L.J., May 12, 1995, at 3.

Accordingly, even if plaintiffs had standing to assert an aiding and abetting claim against the professional defendants under RICO, the claim is dismissed because this cause of action is not legally cognizable.

### 3. *RICO Claims Under 18 U.S.C. §§ 1962(c) & (d)*

■ A defendant is not liable under § 1962(c) for aiding and abetting RICO violations unless it had some part in directing the affairs of the RICO enterprise. *See First*

*Interregional Advisors Corp. v. Wolff,* 956 F.Supp. 480, 485 (S.D.N.Y.1997) (applying *Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S.Ct. 1163, 1170, 122 L.Ed.2d 525 (1993)). Merely being associated with the RICO enterprise does not suffice to establish liability under RICO. *Wolff,* 956 F.Supp. at 485.

■ Here, plaintiffs fail to allege that the professional defendants had some part in *directing* the affairs of a RICO enterprise. Plaintiffs only allege that the professional defendants "knowingly, intentionally or recklessly" assisted in effecting the Transactions, in rendering advice on the Transactions, and/or in preparing disclosures regarding the Transactions or disclosures regarding Keene's asbestos liability. (Compl.¶¶ 330–33, 335).

■ Plaintiffs now claim in their opposition that they have also stated a valid claim under 18 U.S.C. § 1962(d) for conspiracy by the professional defendants to commit substantive RICO violations—a claim that does not appear in any of the 15 causes of action set forth in the amended complaint. The factual allegations and reasonable inferences of the allegations that do appear in the amended complaint, however, could not reasonably be interpreted as alleging that any of the professional defendants agreed to participate in predicate racketeering acts, that they agreed to pursue the same criminal objective, or that they knew that the general nature of the conspiracy extended beyond their individual roles. *See, e.g., United States v. Minicone,* 960 F.2d 1099, 1108 (2d Cir.1992); *United States v. Rastelli,* 870 F.2d 822, 827–28 (2d Cir.1989).

Accordingly, even assuming plaintiffs had standing, and aiding and abetting a civil RICO violation was a legally cognizable cause of action, the RICO claim against the professional defendants must be dismissed because plaintiffs have not alleged a valid claim under either 18 U.S.C. §§ 1962(c) or (d).

### CONCLUSION

For the reasons stated herein, the motions of defendants Anderson Kill Olick & Oshinsky, P.C., Debevoise & Plimpton, Arthur

Anderson LLP, and Kidder, Peabody & Co. are granted. Counts XI and XV of the amended complaint, the only claims remaining against the professional defendants, are dismissed as to these defendants.

SO ORDERED.