Evegeniy ARDEMASOV, Plaintiff,

v.

CITIBANK, N.A., Defendant.

No. 3:12–CV–1570(CSH).

United States District Court,
D. Connecticut.

Signed April 23, 2014.

Albert Feinstein, Law Office of Albert Feinstein, New York, NY, for Plaintiff.

Noah M. Weissman, Bryan Cave, LLP, New York, NY, for Defendant.

### RULING ON MOTION TO DISQUALIFY COUNSEL

HAIGHT, Senior District Judge:

This case is before the Court on Defendant's motion to disqualify Plaintiff's attorney of record.

## I. INTRODUCTION

In this diversity action, removed to federal court by Defendant Citibank, N.A. ("Citibank"), Plaintiff Evegeniy Ardemasov seeks to recover damages allegedly incurred due to the actions of Citibank's alleged agent, Mortgage Information Services, Inc. ("MIS"). According to Plaintiff, on April 6, 2012, in conjunction with Plaintiff's application for a loan with Citibank to refinance a Connecticut property, MIS sent Plaintiff's then current lender, Greenwich Bank and Trust ("Greenwich Bank"), a request for pay-off information on Plaintiff's then $3.5 million construction loan with Greenwich Bank. Thereafter, Greenwich Bank cancelled that construction loan and rejected Plaintiff's pending application for permanent financing (*i.e.*, a term loan) in the amount of $4.5 million. Doc. 1–1 ("Verified Complaint"), p. 2–4 (Factual Allegations, ¶¶ 1–19). *See also* Doc. 14–1, ¶ 6 ("timeline of the events" by Plaintiff's counsel).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Factually, Plaintiff alleges that in April of 2011 Greenwich Bank "provided a revolving construction line of credit" to him for the construction and improvement of his home at 3 Hekma Road, Greenwich, Connecticut. Doc. 1–1, p. 3, ¶ 4. Upon completion of construction on that property, Greenwich agreed to provide Plaintiff with "permanent financing for $5.5 million at [a] 4% annual rate" of interest. *Id.*, ¶ 5. In December of 2011, Plaintiff obtained a certificate of occupancy for said property. *Id.*, ¶ 6. In early 2012, Plaintiff applied to refinance the same property with Greenwich Bank and also with Citibank.[1] *Id.*, ¶¶ 7–8. On April 6, 2012, Citibank alleged-

ly contacted Greenwich Bank and "instructed Greenwich [Bank] to freeze Plaintiff's revolving construction line of credit with Greenwich [Bank]," advising "Greenwich [Bank] that Citi[bank] would pay off Plaintiff's revolving line of credit with Greenwich [Bank] on or before June 1" of 2012. *Id.*, p. 4, ¶ 14. Greenwich Bank then allegedly "did freeze the Plaintiff's revolving construction line of credit" and "cancelled Plaintiff's already finalized application with Greenwich [Bank] for permanent financing." *Id.*, ¶ 15. Plaintiff and his counsel, Albert Feinstein, were allegedly unaware of Citibank's April 6, 2012 instruction to Greenwich Bank until May 29, 2012, when Greenwich Bank notified Plaintiff that "it would be terminating [his] revolving construction line" and that his "application for permanent financing was rejected because of Citi[bank]'s instructions and representations that it was going to close on Plaintiff's loan on or before June 1 [of 2012]." *Id.*, ¶ 16; *see also* Doc. 13, p. 2.

Plaintiff alleges that on June 19, 2013, Citibank denied his mortgage application and thereafter provided three "completely contradicting explanations as to why Plaintiff's application for mortgage was denied." Doc. 13, p. 2. In addition, Citibank allegedly never advised or admitted that it had contacted Greenwich Bank to prevent it from processing Plaintiff's mortgage and issuing additional amounts under the personal line of credit. *Id.* According to Plaintiff, Citibank did, however, allegedly "admit[ ] that it was never willing or able to provide the financing [requested] to Plaintiff." Doc. 1–1, p. 4, ¶ 17.

In sum, Plaintiff asserts that Citibank "secretly engaged in unprofessional, illegal and blatantly unauthorized conduct. . . . on

---

1. Plaintiff alleges that "Citi[bank] approached Plaintiff representing that it [could] provide a permanent financing for the Property faster and on better terms compared to those offered by Greenwich." Doc. 1–1, p. 3, ¶ 8.

April 6, 2012," when "Citibank instructed Greenwich Bank to cancel Plaintiff's existing line of credit and to suspend the processing of [his] application for permanent financing" because Citibank was about to refinance Plaintiff's property. Doc. 13, p. 2. *See also* Doc. 1–1, p. 4, ¶ 18 ("As the result of Citi's willful, improper and unauthorized conduct, Greenwich closed Plaintiff's revolving line of credit and Plaintiff's application for permanent financing was rejected."); *id.*, p. 8–9 (Fifth Count, "Fraudulent Concealment"). Plaintiff further claims that Citibank acted fraudulently when it advised Greenwich Bank that Citibank was planning to pay off Plaintiff's existing credit line as of June 1, 2012. Doc. 13, p. 2.

Plaintiff commenced this action in the Superior Court of the State of Connecticut, Judicial District of Fairfield, on or about October 3, 2012. Doc. 1–1 ("Verified Complaint"). Pursuant to 28 U.S.C. § 1446(b), Citibank removed Plaintiff's action to this federal district court on November 6, 2012, on the basis of diversity of citizenship subject matter jurisdiction, 28 U.S.C. § 1332(a).[2] Plaintiff Evegeniy Ardemasov is a citizen of Connecticut, domiciled at the commencement of this action in Greenwich, Connecticut. Doc. 1–1, p. 5. Citibank is a national bank "domiciled in South Dakota" with "its principal place of business [located] in New York, New York," and thus a citizen of South Dakota and New York.[3] *Id.* The amount in controversy in-

disputably exceeds the sum of $75,000. *Id.*, p. 13–14 ("Claim for Relief"), ¶¶ (I)-(vii) (requesting "no ... less than $500,000.00 on each of Plaintiff's five causes of action; punitive damages in an amount "no ... less than $1,000,000."; and "legal fees, costs, and disbursements [in] this action").

Substantively, Plaintiff's Complaint contains five causes of action against Citibank: (1) negligence with respect to Citibank's processing of his loan application by providing unauthorized instructions to Greenwich Bank; (2) intentional interference with Plaintiff's business relations with Greenwich Bank; (3) negligent interference with contract in "fail[ing] to take ordinary precautions to avoid interfering with Plaintiff's contractual relations with Greenwich Bank and to avoid causing injury to Plaintiff as a result," (4) violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a *et seq.*, through "intentional and knowing" and "deceptive" unfair business acts; and (5) fraudulent concealment of Citibank's actions on April 6, 2012, in contacting Greenwich Bank and requesting it "to close down Plaintiff's revolving line of credit and to stop processing a permanent financing application." Doc. 1–1, p. 2–9.

## III. *MOTION TO DISQUALIFY COUNSEL*

Pending before the Court is Citibank's motion to disqualify Plaintiff's counsel, Al-

---

**2.** 28 U.S.C. § 1332(a) provides, in relevant part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States."

**3.** *See* 28 U.S.C. § 1348 ("All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."). *See also, e.g., RDC*

*Funding Corp. v. Wachovia Bank, N.A.*, No. 3:03CV1360 (JBA), 2004 WL 717111, at *6 (D.Conn. Mar. 31, 2004) ("the Court finds that a national bank is 'located' in and thus a citizen of the state of its principal place of business and the state listed in its articles of association."); *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 994 (7th Cir.2001) ("a national bank is 'located' in, and thus a citizen of, the state of its principal place of business and the state listed in its organization certificate").

bert Feinstein, from representing Plaintiff in this action. As set forth in the May 14, 2013 letter to this Court from Citibank's counsel, Noah Weissman of Bryan Cave LLP [Doc. 12], and supplemented by Citibank's "Reply in Further Support of its Motion to Disqualify Plaintiff's Counsel Albert Feinstein" [Doc. 15], Citibank contends that statements by Feinstein "demonstrate that he will be called as a witness" in this action. Doc. 15, p. 2. Citibank asserts that Feinstein will in fact "be a central witness." Doc. 12, p. 2. Citibank explains that Feinstein "indisputably was the sole person having communications with Greenwich Bank ... regarding whether or not Greenwich Bank would extend the maturity date on Plaintiff's construction loan and reinstate or continue with Plaintiff's loan application for a term loan." Doc. 15, p. 2.

As Citibank's counsel Weissman summarized in his May 14, 2013 letter to this Court:

> Mr. Feinstein—acting as Plaintiff's transactional counsel, before assuming his current role as Plaintiff's litigation counsel—contacted Greenwich Bank to negotiate an extension of his construction loan's maturity date so he could renew his efforts to obtain a term loan. Mr. Feinstein also had conversations with Greenwich Bank about reinstating his application for a term loan. With regard to Citibank, Mr. Feinstein had numerous conversations regarding the viability of Plaintiff's loan application with Citibank. Ultimately, Citibank determined that Plaintiff did not qualify for a loan.

Doc. 12, p. 1–2.

According to Citibank, Feinstein was "the sole person, by his own admission, who had the interactions with Defendants that he claims show that 'Citibank acted negligently, if not outright fraudulently, by misleading Plaintiff about the status of his loan, by providing untrue updates and giving three (3) completely contradictory explanations as to why Plaintiff's application for a mortgage was denied....' " Doc. 15, p. 2 (citing Plaintiff's Opposition [Doc. 13], p. 2).

At the parties' Rule 26(f) conference in February of 2013, Citibank's counsel "informed Plaintiff's counsel that Citibank would need to depose Mr. Feinstein in this action." [4] Doc. 12, p. 2. On February 11, 2013, Weissman followed up by sending a letter to Feinstein, reminding him that "Citibank intends to depose you as a fact witness in this action" and requesting that Feinstein withdraw as Plaintiff's counsel pursuant to Local Rule 83.13 of Civil Procedure because "[i]t is clear from information that you provided to date that you will be a fact witness in this action." Doc. 13–1. *See also* Doc. 12–2, p. 1 (citing *Whit-Serve, LLC v. GoDaddy.com, Inc.*, No. 3:11cv948, 2011 WL 11707426 (JCH)(D.Conn. Dec. 15, 2011) (unpublished in Westlaw and Lexis)).[5]

**4.** Although Albert Feinstein is Plaintiff's only attorney of record in this action, his "colleague, Yelena Klurfeld," was the attorney who attended the Rule 26(f) conference on Plaintiff's behalf and was informed by Citibank (*i.e.*, Weissman's "colleague, Scott Kaiser,") that Feinstein would be deposed. Doc. 13–1, p. 1.

**5.** In *Whitserve, LLC v. GoDaddy.com*, No. 3:11cv948 (JCH), Judge Hall of this District cited Local Rule 83.13(b) to grant a motion to disqualify an entire law firm representing plaintiff Whitserve in an action alleging that defendant GoDaddy.com had infringed on plaintiff's patents. Doc. 96. The basis of the motion was that a key member of the law firm representing plaintiff was Wesley Whitmyer, the "sole inventor of the patents at issue in [the] case" and it was "undisputed that Whitmyer [would] be a key witness at trial for both parties." *Id.*, p. 2. Furthermore, although he was not technically a "party litigant" (*i.e.*, not

On February 15, 2013, Feinstein responded to Weissman's letter by email, asserting that Citibank's demand that Feinstein withdraw as counsel was "unethical and frivolous" and "serve[d] no legitimate purpose, but to harass [him] and gain an improper advantage in the litigation." Doc. 13–2, p. 1. Moreover, Feinstein emphasized that "[n]o facts show[ed] that [he] had any knowledge, let alone any 'relevant and material' knowledge about the underlying events." *Id.* Feinstein suggested that Weissman "depose the third parties who have the firsthand knowledge of [the] facts" of the case.[6] *Id.* He further questioned Weissman's reasoning to depose him, stating that "if your logic had any merit, then I should call you to testify as a material witness ... since you communicated with Greenwich Bank." *Id.* In conclusion, Feinstein suggested that Weissman "take the disqualification matter up with the judge before we proceed with [the] Rule 26(f) Report."[7] *Id.*

Later on February 15, 2013, Weissman sent a reply email to Feinstein, itemizing "eight statements" Feinstein had made "that formed the basis for Citibank's conclusion that Mr. Feinstein would be called as a witness on Plaintiff's behalf." *See* Doc. 12–2, p. 1 (quoting an email Feinstein sent to Weissman, dated November 9, 2012, Doc. 14–1, p. 1–2 (¶¶ 7–14)). Weissman characterized Feinstein as describing the events in the list as "material" and then queried: "Is it your contention that these events are not material or relevant?" Doc. 12–2, p. 1. Weissman then offered, "If you are willing to stipulate any of these events are not material, please advise us and we can reconsider our position" on disqualification. *Id.* Weissman closed by once again citing Local Rule 83.13 and *WhitServe, LLC v. GoDaddy.com, Inc.,* insisting that "[w]e are not seeking to harrass [sic] you or your client, but to insure that our client is afforded a fair trial in accordance with the local rules." *Id.*

Later that same day, Weissman again emailed Feinstein, urging, "Let's try this more simply. Will you stipulate that you will not be giving testimony in this case?" Doc. 13–3, p. 1.

Apparently displeased by Weissman's request that he stipulate not to testify, Feinstein replied by labeling Weissman's request "improper and unethical under the

---

named personally as plaintiff), Whitmyer was the managing member of plaintiff, Whitserve, LLC. Under such circumstances, Judge Hall found that neither key witness Whitmyer, nor the members of his law firm, should be allowed to represent plaintiff Whitserve under Local Rule 83.13(b). In so holding, Judge Hall was particularly mindful that were she to rule otherwise, "Whitmyer's interest will not be clear to the jury, and he will more likely be viewed by the jury as an attorney in plaintiff counsel's firm, not as the plaintiff in the case." *Id.*, p. 4.

*Whitserve, LLC* is, however, factually inapposite to the case in suit in that Feinstein is not indisputably a key fact witness for both sides. Nor is he a business partner or co-member of a limited liability company with Plaintiff Ardemasov in this action. There is thus no confusion as to the separate identities and interests of Plaintiff and his counsel.

6. In that regard, Feinstein referenced the "Disciplinary Rules," stating that "the law of disqualification clearly provides that in addition of [sic] being 'relevant and material,' [his] testimony "must be unobtainable elsewhere" and must "pose[] a significant risk of trial taint." Doc. 13–2, p. 1. *See also* n. 11, *infra*, referencing former Disciplinary Rule 5–102(A) of the New York Code of Professional Responsibility ("DR 5–102(A)").

7. Also included in the Exhibits appended to the present motion is a chain of emails exchanged between Feinstein and Weissman, querying whether Feinstein will accept a subpoena to appear at a deposition and discussing, without success, amounts and terms for a possible settlement. *See* Doc. 12–3, p. 1–4.

Disciplinary Rules." Doc. 11–1, p. 2. He conceded, "if I ever become a necessary and material witness and the only source of information, I must withdraw and provide a [sic] testimony as a witness." *Id.* However, he objected to Weissman's request "for any blank preclusion of [Feinstein's] testimony," instructing Weissman that not only should he retract his demand for Feinstein's withdrawal from the case but, "[l]astly, I'd need you to stipulate that you will not call me as a witness, so we could avoid this circus in the future." *Id.* He concluded, "please put [this] agreement] in writing (email is fine) and let's move on." *Id.*

No such agreement was reached. Weissman's brief reply was "Sounds like we will need to address [this] with the court." *Id.*

According to Feinstein, negotiations regarding settlement of the case then ensued between the parties from February 15 to May 6, 2013. *Id.,* p. 3. During that time, no further mention was made of Feinstein's disqualification. *Id.*

On May 6, 2013, settlement not having been reached between the parties, the issue of Feinstein's disqualification re-emerged. On that date, Citibank's counsel Scott Kaiser, also of Weissman's law firm, Bryan Cave LLP, sent an email to Feinstein, reminding him, "you are a fact witness in the *Ardemasov v. Citibank* litigation" and "[a]ccordingly, we are going to serve a subpoena to take your deposition." Doc. 12–3, p. 1. Kaiser concluded by instructing, "Please let us know whether you will accept service of this subpoena." *Id.*

On May 10, 2013, Feinstein sent a letter to the Court, "seeking the court's involvement" because, *inter alia,* Citibank "continues harassing Plaintiff with threats of Plaintiff's counsel'[s] disqualification and subpoenas for deposition." Doc. 11–1, p. 1. Feinstein argued that "Defendant's contin-uous harassment of Plaintiff's counsel and improper demand to withdraw as Plaintiff's counsel prevents Plaintiff from finalizing the Rule 26(f) Report necessary to enter the Scheduling Order pursuant to Local Civil Rule 16 and to commence the formal discovery." *Id.,* p. 3.

As described *supra,* Weissman then sent the Court the May 14, 2013 letter, detailing the facts giving rise to the disqualification issue. Doc. 12. The case was at an impasse, with the parties deadlocked on the issue of whether Feinstein should withdraw his representation of Ardemasov. In the absence of any further submissions on the subject by Citibank, the Court construes Weissman's May 14, 2013 letter as a motion to disqualify Feinstein as Plaintiff's counsel in this action. This Ruling resolves that motion.

## IV. STANDARD FOR DISQUALIFICATION

### A. Second Circuit—"High Standard" of Proof

The Second Circuit has determined that "[a] district court has 'substantial latitude' to require disqualification." *United States v. Zichettello,* 208 F.3d 72, 104 (2d Cir.2000) (citing, *inter alia, Wheat v. United States,* 486 U.S. 153, 163, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)), *cert denied sub nom., Lysaght v. United States,* 531 U.S. 1143, 121 S.Ct. 1077, 148 L.Ed.2d 954 (2001). *Accord Enzo Biochem, Inc. v. Applera Corp.,* 468 F.Supp.2d 359, 364 (D.Conn.2007). This discretionary authority to disqualify an attorney "derives from [federal courts'] inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir.2005) (citation and internal quotation marks omitted). "In exercising this power, [courts] attempt[ ] to balance a

client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *Id.* The "focus of inquiry is on whether an attorney's conduct would tend to taint the underlying trial," *CQS ABS Master Fund Ltd. v. MBIA Inc.*, No.12 Civ. 6840(RJS), 2013 WL 3270322, at *8 (S.D.N.Y. June 24, 2013) (citation and internal quotation marks omitted); and the moving party bears "the heavy burden of proving facts required for disqualification," *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983).

 In general, the Second Circuit "disfavors motions to disqualify because of the potentially adverse effect on a client's right to engage counsel of his or her choosing, and because such motions are often made for tactical reasons."[8] *Rodriguez v. City of New Haven*, 214 F.R.D. 66, 68 (D.Conn.2003) (citing, *inter alia*, *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir.1978)). *See also Board of Educ. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979) (Second Circuit bases its "reluctance" to disqualify attorneys on "the fact that disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons") (citations omitted). *Accord Tucker v. Amer. Int'l Group, Inc.*, No. 3:09–cv–1499 (CSH), 2012 WL 314866, *13 (D.Conn. Jan. 31, 2012) ("courts are understandably leery of turning trial counsel in the case before them into subpoenaed witnesses, because too often it is an effort to harass and intimidate and make trouble for a party by going after the lawyer.")

(internal quotation marks omitted); *First Interregional Advisors Corp. v. Wolff,* 956 F.Supp. 480, 489 (S.D.N.Y.1997) ("Disqualification of a party's chosen counsel is a 'drastic measure'" that is "viewed with disfavor") (internal citations omitted). Moreover, "even when made in the best of faith, such motions inevitably cause delay." *Nyquist,* 590 F.2d at 1246.

 Specifically, with respect to an attorney testifying as a witness in his or her client's pending litigation, courts within this Circuit "have required more than a showing that the testimony is relevant, material and necessary" to disqualify said counsel from representation. *Seth Co. Inc. v. U.S.C.I.R.*, No. 3:01CV01584(PCD), 2002 WL 31959105, at *1 (D.Conn. Nov. 26, 2002) (citation omitted). Rather, a "high standard of proof" is required, *Evans,* 715 F.2d at 791; and necessity for counsel to testify is determined by "taking into account factors such as the significance of the matters, weight of the testimony, and availability of other evidence," *Security Ins. Co. of Hartford v. Mendon Leasing Corp.*, No. 01 Civ. 9054, 2002 WL 31387484, at *2 (S.D.N.Y. Oct. 22, 2002) (citation and internal quotation marks omitted). Courts have held that "[i]n addition, the testimony must be prejudicial to the testifying attorney's client." *Id.* (internal quotation marks and brackets omitted). The "projected testimony of a lawyer or firm member must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir.1989).[9]

---

8. Because motions to disqualify are generally disfavored, they are subject to "fairly strict scrutiny." *Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir.1989).

9. "Furthermore, while the role of a witness is to objectively relate facts, the role of an advocate is to advance his client's cause." *Seth Co. Inc. v. U.S.C.I.R.*, No. 3:01 CV01584(PCD), 2002 WL 31959105, at *2

Lastly, in general, "depositions of opposing counsel are disfavored." *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir.1991). *See also Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986)) ("We view the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed only in limited circumstances.").

## B. Local Rule 83.13—"Prohibition on Counsel as Witness"—"ought to be called as a witness"

Citibank requests that this Court disqualify Feinstein from representing Plaintiff pursuant to this District's Local Rule 83.13 of Civil Procedure, which mandates that "[a] lawyer shall not accept employment in contemplated or pending litigation if he or she knows or it is obvious that he

or she or a lawyer in the same firm *ought to be called as a witness*." D. Conn. L. Civ. R. 83.13(a) (emphasis added). There are, however, three enumerated exceptions in which a lawyer who "ought to be called as a witness" may represent the client and still testify: if the testimony will relate solely to—(1) "an uncontested matter;" (2) "a matter of formality;"[10] and/or (3) "the nature and value of the legal services rendered in the case by the lawyer or the law firm to the client." *Id.*

Furthermore, a lawyer must withdraw from representing a client in a trial if he or she "learns or it is obvious that he or she or a lawyer in the same firm ought to be called as a witness on behalf of the client." *Id.* 83.13(b). At that point, the lawyer "shall withdraw" and the lawyer's "law firm shall not continue representation in the trial." *Id.*[11] The exceptions set forth in

---

(D.Conn. Nov. 26, 2002) (citation and internal quotation marks omitted). Therefore, "if the attorney's testimony is adverse to his client, there is a direct conflict between the attorney's duties to his client, and his obligation to testify truthfully under oath." *Id.* (citation and internal quotation marks omitted).

**10.** Testimony regarding matters of formality is also limited by the caveat that such testimony will be allowed only if "there is no reason to believe that substantial evidence will be offered in opposition to the testimony." D. Conn. L. Civ. R. 83.13(a)(2).

**11.** Local Rule 83.13(b), captioned "Withdrawal as Counsel When the Lawyer Becomes a Witness," provides in relevant part:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or she or a lawyer in the same firm ought to be called as a witness on behalf of the client, he or she shall withdraw from the conduct of the trial and the law firm shall not continue representation in the trial, except that the lawyer may continue the representation, and he or she or a lawyer in the law firm may testify in the circumstances enumerated in Rule 83.13(a).

D. Conn. L. Civ. R. 83.13(b).

As Weissman points out, Local Rule 83.13 is virtually identical to former Disciplinary Rule 5–102(A) of New York's Code of Professional Responsibility ("DR 5–102(A)"). *See, e.g., MacArthur v. Bank of New York*, 524 F.Supp. 1205, 1208 (S.D.N.Y.1981). For the current, similar provision, *see* Rules of Professional Conduct [22 NYCRR § 1200.0], Rule 3.7(a) ("Lawyer as witness"). Rule 3.7 prevents a lawyer from acting as an "advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact" with five exceptions. Three of the exceptions mirror those in this District's Local Rule 83.13(a); and two additional exceptions allow the lawyer to remain as an advocate: if the "disqualification of the lawyer would work substantial hardship on the client" or "the testimony is authorized by the tribunal." 22 N.Y. ADC § 1200.0, Rule 3.7(a)(3), (5).

Similarly, in the state of Connecticut, where this Court sits in diversity jurisdiction, Rule 3.7 of Connecticut's Rules of Professional Conduct provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) The testimony relates to an uncontested issue;

prior subsection, Rule 83.13(a), are also incorporated as exceptions to subsection (b).

Lastly, paragraph two of subsection (b) addresses when a lawyer "learns or it is obvious that he or she or a lawyer in the same firm may be called as a witness *other than* on behalf of his or her client." *Id.* (emphasis added). In those circumstances, "the lawyer may continue the representation until it is apparent that his or her testimony is or may be prejudicial to the client." *Id.*

The Second Circuit has interpreted the mandatory language of "ought to be called as a witness" to suggest that courts bear the ultimate responsibility to protect the integrity of the judicial process by disqualifying counsel who "ought to testify" and, in so doing, would jeopardize that integrity. *See, e.g. J.P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357, 1359 (2d Cir.1975) (test for disqualifying counsel under the disciplinary rule is not whether the attorney will be called as a witness, or whether the plaintiff presently plans to call the attorney, but whether the attorney "ought to be called"); *MacArthur v. Bank of New York,* 524 F.Supp. 1205, 1209 (S.D.N.Y.1981) ("The mandatory nature of [such language] requires that the court be able to disqualify counsel *sua sponte* when the need arises").

■ Thus, even where neither party's counsel seeks disqualification—whether, for example, due to financial gain in continuing representation or tactical strategy to avoid opposing counsel's testimony—the court "must intervene to ensure that the mandate [of the rule] is followed." [12] *MacArthur,* 524 F.Supp. at 1209. "An advocate who also ought to be called as a witness hurts his client because the advocate's ability to objectively assess his client's case may become clouded." *Yankelevitz v. Cornell Univ.,* No. 95 CIV. 4593(PKL), 1996 WL 447749, at *2 (S.D.N.Y. Aug. 7, 1996). Under such circumstances, "[t]he rule operates to protect the interests of the [client], the interests of the adverse party, and the reputation of the legal profession as a whole." *MacArthur,* 524 F.Supp. at 1208.

The Second Circuit has held that the "correct test for disqualification of counsel" is a "restrained approach," which "calls for disqualification only upon a finding that the presence of a particular counsel will taint the trial by affecting his or her presentation of a case." *Bottaro v. Hatton Associates,* 680 F.2d 895, 896 (1982). Consequently, district courts within the Circuit have held that in order for an attorney to be disqualified in that he or she "ought" to testify, the prospective tes-

(2) The testimony relates to the nature and value of legal services rendered in the case; or
(3) Disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9 [regarding conflicts of interest].

**12.** As Judge Sofaer explained in *MacArthur,* a client may not "waive the rule's protection by promising not to call the attorney as a witness." 524 F.Supp. at 1209. After all, "[t]he client will generally be reluctant to forego the

assistance of familiar counsel or to incur the expense and inconvenience of retaining another lawyer" and "[t]he most serious breaches of the rule, in which an attorney has become intimately involved in the subject matter of the dispute, will often be the very situations in which withdrawal is most burdensome." *Id.* "Moreover, the party will generally be guided in its decision by the very attorney whose continued representation is at issue." *Id.* Accordingly, the court must evaluate the facts supporting disqualification even in the absence of a request for disqualification.

timony must be either "necessary" (*i.e.*, integral, more than corroborative of other witnesses' testimony) or at least "significantly useful" to his or her client. *See, e.g., MacArthur*, 524 F.Supp. at 1206 (defendant's lead counsel was "intimately involved in the events at the heart of [the] litigation," the creation of the joint venture at issue, making his testimony "significantly useful to his client"); *Gandler v. Nazarov*, No. 94 CIV. 2272(CSH), 1994 WL 391665, at *2 (S.D.N.Y. July 28, 1994) (disqualifying defendant's counsel who was "intimately involved in the negotiation and execution" of the contract at issue and was a "necessary" witness, "the only witness who could contradict [the defendant's] testimony for the plaintiffs"); *Kubin v. Miller*, 801 F.Supp. 1101, 1113 (S.D.N.Y.1992) ("In cases in which the attorney's knowledge is highly relevant and peculiarly in his possession ... it is clear that he must be disqualified" in that he "ought to testify."); *Wickes v. Ward*, 706 F.Supp. 290, 292 (S.D.N.Y.1989) (plaintiff's counsel disqualified (*i.e.*, "ought to testify") where he "clearly ha[d] information crucial to plaintiff's case" in that the allegations regarding lack of due process at plaintiff's disciplinary hearing rested "substantially, if not entirely, on the nature of what [her attorney] heard [the hearing officer] say at the sidebar conference"). *See also J.P. Foley & Co.*, 523 F.2d at 1359 (disqualifying plaintiffs' counsel in fraud litigation where attorney negotiated the loan at issue, "ha[d] already been deposed and an examination of the record before [the court] compel[led] the conclusion that his testimony [was] necessary to the plaintiffs' case"); *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 539 n. 21 (3d Cir.1976) (the language "ought to be called as a witness" is "concerned only with the lawyer-witness who has crucial information in his possession which must be di-

vulged."), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). *Cf. Metal Management, Inc. v. Schiavone*, No. 3:06–cv–2004 (VLB), 2007 WL 2705523 at *3 (D.Conn. Sept. 13, 2007) (plaintiffs' counsel not disqualified because "[w]hile under various circumstances [his] testimony could prove useful in the[ ] proceedings, it [was] not obvious that he [would] be needed as a witness given the abundance of evidence at the parties' disposal;" and defendant "provided no reason why [plaintiffs' counsel's] testimony and not any of the other resources available ought to be introduced at the hearing").

## V. DISCUSSION

### A. Defendant's Argument to Disqualify

In support of Citibank's motion, Citibank's counsel, Weissman, presented to the Court a portion of a "timeline" Feinstein prepared, detailing the events which allegedly gave rise to Plaintiff's asserted causes of action. Doc. 14–1 (email from Feinstein to Weissman, dated Nov. 8, 2012). Included in the timeline are various instances during which Feinstein reached out to or interacted with Citibank's agents and executives to obtain information with respect to Citibank's allegedly improper actions relating to his Greenwich Bank loans on April 6, 2012. *See* Doc. 14 (Affidavit Noah M. Weissman), ¶¶ 2–3; *see also, e.g.*, Doc. 14–1, p. 1 (¶ 8) ("Mrs. Timken [the General Counsel at CitiMortgage] shared with me that Citi did authorize to contact Mr. Ardemasov's bank (Greenwich Bank);" *id.*, p. 2 (¶¶ 11–12) ("On July 5, I sent a letter to Citi's executives Sanjiv Das and Cece Stewart'" and in return received a "letter [that] completely contradicted the timeline and reasons for Citi's actions that were claimed in multiple correspondences from Kathleen Timken and other Citi's executives"); *id.*,

p. 2 (concluding para.) ("In sum, Citi's cutting off Mr. Ardemasov's credit lien [sic] coupled with Citi's lies and outrageous handling of Mr. Ardemasov's application clearly show that Citi's actions were negligent, if not outright willful."). *See also* Doc. 14–2 (email from Richard Muskus of Greenwich Bank to Feinstein, setting forth an "outline" of facts Muskus alleges occurred with respect to Plaintiff's construction loan and application for permanent financing, including times Muskus "personally contacted Attorney Feinstein requesting status").

Citibank, through Weissman, asserts "that Albert Feinstein cannot serve as litigation counsel to Plaintiff Evegeniy Ardemasov because Mr. Feinstein's own statements demonstrate that he will be called as a witness." Doc. 15, p. 2. In support, Weissman asserts that "Feinstein indisputably was the sole person having communications with Greenwich Bank ... regarding whether or not [it] would extend the maturity date on Plaintiff's construction loan and reinstate or continue with Plaintiff's loan application for a term loan." *Id.* Moreover, Weissman claims that "Feinstein also was the sole person, by his own admission, who had the interactions with Defendant[ ]" that show that Citibank "acted negligently, if not outright fraudulently, by misleading Plaintiff about the status of his loan, by providing untrue updates and giving three (3) completely contradictory explanations as to why Plaintiff's application for a mortgage was denied...." *Id.* (citing Doc. 13 (Plaintiff's Opposition Brief), at 2).

Weissman accuses Feinstein of posturing about "harassment and intimidation," but refusing to confirm "that he will not appear as a witness at trial." Doc. 15, p. 2. Rather, Weissman asserts, Feinstein "insists on preserving [the] option [to testify] while seeking to preclude any discovery

by Citibank on what he would say at trial." *Id.* Weissman concludes that unless Feinstein stipulates that he will not testify, he should be disqualified from representing Ardemasov in this litigation and must appear for the purpose of having his deposition taken by Citibank. *Id.*

In support of disqualification, Weissman maintains that although Feinstein denies "any direct knowledge about the events arising on April 6, 2012," the events at issue in this case "do not solely concern events that occurred on or before April 6, 2012, when [MIS] sent the request for payoff information." *Id.*, p. 3. Rather, Citibank contends that Feinstein was the person who "allegedly spoke to Greenwich Bank about extending his credit line/construction loan beyond the initial maturity date to allow Plaintiff time to pursue an application for a term loan;" "spoke to Greenwich about whether or not Plaintiff intended to cancel his loan application;" and "spoke to Greenwich about whether or not Plaintiff wanted his loan application reinstated or further considered." *Id.* In addition, Citibank notes that Feinstein conceded in his opposition that he had communications "in the course of representing Plaintiff's interest in connection with Plaintiff's loan application" with Citibank. *Id.*, p. 5 (citing Doc. 13, p. 6).

In sum, Citibank argues that because Feinstein "played an integral role" in the interactions giving rise to Plaintiff's claims, he is a proper witness in this litigation— *i.e.*, he cannot "preclude Citibank from taking discovery from him on [the events at issue] and preserve his option of testifying at trial." *Id.*

Furthermore, Citibank concludes that because Feinstein will not voluntarily withdraw from representing Ardemasov, the Court must disqualify him pursuant to Local Rule 83.13. Citibank cites *MacArthur v. Bank of New York*, 524 F.Supp. 1205,

1208 (S.D.N.Y.1981), for its interpretation of former Disciplinary Rule 5–102(A) of New York's Code of Professional Responsibility ("DR 5–102(A)"), which Citibank notes "is virtually identical to" this District's Local Rule 83.13, mandating that a lawyer withdraw if he "ought to be called as a witness on behalf of his client." Doc. 15, p. 6.

The Court recognizes that in 1986 Connecticut's rules of practice, including DR 5–102(A), were replaced by the Code of Professional Responsibility, Rule 3.7(a), captioned "Lawyer as witness." [13] In any event, the Court agrees that while DR 5–102(A) was effective, it mirrored this District's Local Rule 83.13 in mandating that an attorney "shall withdraw from the conduct of the trial" and "shall not continue representation in the trial" if "a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client." [14]

Citibank also cites *MacArthur* to assert that any "argument that the lawyer's testimony would merely corroborate other testimony ... is unavailing" to prevent disqualification of counsel. Doc. 15, p. 5 (quoting *MacArthur*, 524 F.Supp. at 1208). Rather, "[t]he test is whether the attorney's testimony could be significantly useful to his client; if so, then he ought to be called." *Id.* (quoting *MacArthur*, 524 F.Supp. at 1208).

Finally, Citibank finds that Feinstein must be disqualified "to prevent Citibank from being prejudiced by undue credibility" that a jury could afford his testimony at trial. Doc. 15, p. 6 (citing *Munk v. Goldome Nat'l Corp.*, 697 F.Supp. 784, 786 (S.D.N.Y.1988) (disqualifying transactional counsel in circumstances where, if called upon to testify, "opposing counsel could be handicapped in challenging [said counsel's] credibility" because the testifying attorney "also appears as an advocate in the case")). [15]

Before turning to analyze Plaintiff's opposition, the Court notes that there is merit in Citibank's argument that Ardemasov's claims, and perhaps Citibank's defense, do not solely concern events prior to April 6, 2012. Thus, if as Citibank suggests, Feinstein "played a key role" in subsequent events that "control to what extent, if any Plaintiff was harmed by any confusion engendered by the MIS letter" [Doc. 15, p. 3], Feinstein potentially "ought to be called as a witness" within the meaning of Local Rule 83.13(b). He was admittedly involved in various communications with officials of Citibank and Greenwich Bank after April 6, 2012; and the subject of those communications related to facts which may have evidentiary bearing on whether Greenwich Bank terminated his construction loan and/or failed to approve his request for permanent financing as the result of Citi-

**13.** For the text of Rule 3.7(a) of Connecticut's Rules of Professional Conduct, *see* n. 11, *supra*. The Courts notes that Rule 3.7(a) now disqualifies an attorney who is "likely to be a necessary witness."

**14.** New York's DR 5–102(A) was replaced after *MacArthur v. Bank of New York*, 524 F.Supp. at 1208, by Rule 3.7(a) of New York's Rules of Professional Conduct, which bars an attorney from acting "as [an] advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact."

**15.** The issue regarding Feinstein's credibility as a witness would only arise in the unlikely event that Feinstein were allowed to continue representing Ardemasov in this litigation *and* to testify as a witness at trial. Under Local Rule 83.13(b), in the absence of one of the delineated exceptions "enumerated in Rule 83.13(a)," Feinstein would be required to "withdraw from the conduct of the trial" as soon as he learned that he ought to testify as a witness at trial for his client.

bank's actions. Such communications may also relate to the issue of Citibank's alleged fraudulent concealment of its actions prior to April 6, 2012.[16]

In other words, according to Citibank, Feinstein may potentially possesses knowledge of facts that are relevant, material, and even conceivably necessary in this litigation. Moreover, such facts, if any, would likely be contested and go beyond matters of formality.

On the other hand, Feinstein's possible possession of certain relevant facts, standing alone, is not determinative on the issue of disqualification. In applying the high standard of proof employed in the Second Circuit, the Court must consider whether Feinstein "ought to be called as a witness," D.Conn. L. Civ. R. 83.13—that is whether Feinstein's testimony would be needed by, or at the least, "significantly helpful," to his client.[17] In so doing, the Court may consider such factors as the significance of the matters, weight of the testimony, and availability of other evidence. *Security Ins. Co. of Hartford,* 2002 WL 31387484, at *2. Moreover, Citibank, as the moving party, bears the burden of showing why Feinstein "ought" to testify by describing the relevant facts and claims that such testimony would encompass and whether there may not be available other, sufficient (*i.e.,* duplicative), perhaps even stronger and more helpful sources of such evidence.[18]

Although corroborating testimony of others would not, in and of itself, negate counsel's obligation to testify, it is a factor for the Court to consider regarding the significance and weight of his proposed testimony.

### B. *Plaintiff's Opposition to Disqualification*

Plaintiff opposes the motion to disqualify his counsel, Albert Feinstein, arguing that "[t]here is no basis in law or fact to support Defendant's attempt to deprive [him] of counsel of his choice." Doc. 13, p. 1. He argues that Feinstein "is not a 'material witness' since he has no knowledge of" and did not take part "in the events underlying the causes of action in the Complaint." *Id.* He also points to Defendant's request for Feinstein to "stipulate that [he] will not be giving testimony in this case" as evidence—*i.e.,* a concession by Citibank—that it will not be necessary for Feinstein to testify in order for Plaintiff to present his case. *Id.* Plaintiff asserts that the motion to disqualify is solely intended "to harass Plaintiff, gain an improper advantage in this litigation, and to coerce [him] into accepting Defendant's low ball settlement offer." *Id.,* p. 2.

With respect to the core facts in this case, Plaintiff asserts that it is "abundantly clear form the Complaint and the documents in Citibank's counsel'[s] possession

---

16. For example, Feinstein wrote by email [Doc. 12–2] that he contacted Citibank executives to inquire as to whether Citibank authorized contact with Greenwich Bank on April 6, 2012, as well as other details regarding Citibank's actions in processing or failing to process Plaintiff's loan request to Citibank.

17. Citibank makes no argument that Feinstein "ought to be called as a witness" on its behalf in this case.

18. Citibank argues that Feinstein "is the only witness who can testify to Plaintiff's account

of events giving rise to Greenwich's extension of his line of credit." Doc. 15, p. 8. However, both counsel concur that Feinstein communicated with employees of Greenwich Bank and Citibank regarding the loans at issue so that those employees should possess the same facts as Feinstein. Plaintiff thus argues that "all [of] the information obtained by Plaintiff's counsel came either from the Defendant or third parties that can and should be deposed as part of discovery in the instant action." Doc. 13, p. 6.

that Plaintiff's counsel does not and may not have any direct knowledge about the events arising on April 6, 2012 since Plaintiff's counsel learned about such events from Greenwich Bank no earl[ier] than May 29, 2012." *Id.*, p. 3. Plaintiff suggests that, "[i]n any event, Defendant's counsel can easily obtain any such information [regarding the facts giving rise to his claims] from the first hand [sic] witnesses, such as Defendant itself or Greenwich Bank." *Id.*, p. 5.

With respect to Citibank's alleged tactical harassment, Plaintiff began "harassing Plaintiff's counsel to withdraw from the case" in February of 2013. *Id.* Specifically, Plaintiff points to the letter dated February 11, 2013 [Doc. 13–1] in which Weissman advised Feinstein that "Citibank intends to depose you as a fact witness in this action." Doc. 13, p. 3.

Plaintiff faults Citibank for not seeking the Court's assistance on the disqualification issue at that time. In that regard, Plaintiff calls the Court's attention to Feinstein's strong suggestion in his email to Weissman on February 15, 2013 "that you [Citibank's counsel] take the disqualification matter up with the judge before ... proceed[ing] with the Rule 26(f) Report." Doc. 13–2, p. 1. Plaintiff argues that, rather than bringing this dispute to the Court's attention, Weissman continued the controversy by sending Feinstein an email on February 15, 2013 asking him, "Will you stipulate that you will not be giving testimony in this case?" Doc. 13, p. 4; *see also* Doc. 13–3. Plaintiff alleges that Citibank's counsel's demand that Feinstein make such a stipulation "clearly negates any

claim by Defendant that Plaintiff's counsel is the 'material witness.'" Doc. 13, p. 5.

Plaintiff notes that between February 15 and May 6, 2013, settlement negotiations ensued without further mention of Feinstein's possible disqualification. Doc. 13, p. 4. Then, only after Plaintiff allegedly rejected Citibank's "low offer," Citibank's counsel emailed Feinstein on May 6, 2013, asserting "You are a fact witness in the *Ardemasov v. Citibank* litigation" and "[a]ccordingly, we are going to serve a subpoena to take your deposition," *id.*, *see also* Doc. 13–4, and "[i]f you do not agree to accept service of the subpoena, then we will need to have a process server come to your office." [19] Doc. 13–4. Plaintiff maintains that such interchanges further evidence Citibank's improper, harassing motive behind seeking his disqualification.

Lastly, Plaintiff emphasizes that "[t]he courts should act very carefully before disqualifying an attorney and negating the right of a client to be represented by counsel of choice." *Id.*, p. 7 (citing *Blakemar Constr., LLC v. CRS Eng., Inc.*, No. CV040412727S, 2005 WL 647731, at *2 (Conn.Super.Ct. Feb. 10, 2005)). Even if testimony is "relevant," it may not be "strictly necessary," depending on "such factors as the significance of the matters, weight of the testimony and availability of other evidence ..." *Id.* (citing *Blakemar Constr., LLC*, 2005 WL 647731, at *2). Thus Plaintiff concludes that even if Feinstein were a "material witness," there is no proof that he is "a necessary witness" because "there may be less disruptive means of getting the information that [Citibank] seeks." Doc. 13, p. 7 (quoting *Rubis v. Hartford Fire Ins. Co*, Civ. No. 3:11–cv–

19. Plaintiff also alleges that despite the fact that this Court's Standing Order on Scheduling in Civil Cases bars discovery until the parties file a joint Rule 26(f) Report and the Court thereafter issues a Scheduling Order, pursuant to D. Conn. L. Civ. R. 16 & Fed. R.Civ.P. 26, Weissman proceeded with serving discovery demands, including subpoenas for depositions and requests for production of documents upon Plaintiff and third party witnesses. Doc. 13, p. 4.

796 (WWE), 2012 WL 996530, at *1 (D.Conn. Mar. 23, 2012)).

## C. *Court's Findings*

 The Court recognizes that "[i]n view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny." *Rubis v. Hartford Fire Ins. Co.,* No. 3:11cv796 (WWE), 2012 WL 1288483, at *2 (D.Conn. April 16, 2012) (citing *Scantek Medical, Inc. v. Sabella,* 693 F.Supp.2d 235, 238 (S.D.N.Y.2008)). Such motions "impinge on a party's right to employ the counsel of its choice" and "inevitably result in delay and added expense." *Rubis,* 2012 WL 1288483, at *2. For such reasons, "the Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel." *Id.; see also Evans,* 715 F.2d at 791; *Scantek Med. Inc.,* 693 F.Supp.2d at 239 (collecting cases). It thus follows that necessity for counsel to testify is determined by "taking into account factors such as the significance of the matters, weight of the testimony, and availability of other evidence." *Security Ins. Co. of Hartford,* 2002 WL 31387484, at *2. Counsel's testimony must generally be "significantly useful," *MacArthur,* 524 F.Supp. at 1208, or "relevant, material and necessary," *Seth Co. Inc.,* 2002 WL 31959105, at *1, to be deemed the basis for disqualification.

At the outset, the Court is mindful of the hardship that Plaintiff would endure should his counsel be disqualified and also the resulting delay that would burden both parties. Plaintiff would have the larger burden and expense of securing new counsel, but both sides would likely suffer delay while the newly acquired counsel became acquainted with the facts and prior proceedings in this case.

In determining whether Plaintiff's counsel, Feinstein, "ought to be called as a witness" in this case, the Court also recognizes that neither counsel has expressed a wish to call Feinstein as a witness.[20] However, the application of Local Rule 83.13 "does not depend on whether [a party's] counsel will be called but whether ... he 'ought to be called as a witness' in the case." *Kempner v. Oppenheimer & Co., Inc.,* 662 F.Supp. 1271, 1279 (S.D.N.Y. 1987) (internal quotation marks omitted) (citing *J.P. Foley & Co., Inc.,* 523 F.2d at 1359). The Court thus examines the evidence presented by Citibank as the moving party to determine whether there exists an objective, factual basis for attorney disqualification in this case.

 First, the Court notes that Feinstein has asserted without dispute that he has no direct knowledge of the underlying facts relating to the causes of action that arose *on or about April 6, 2012,* the date MIS allegedly contacted Greenwich Bank regarding Plaintiff's then construction loan and permanent loan application. In the absence of evidence to the contrary, Feinstein is neither a necessary nor significantly useful witness regarding the claims in this action that arose on or before the April 6 date. *See, e.g.,* Doc. 13–2, p. 1 (asserting that "[n]o facts show[ed] that [Feinstein] had any knowledge, let alone any 'relevant and material' knowledge about the underlying events"). The Court therefore finds no basis that Feinstein "ought to be called as a witness" regarding those claims.

---

**20.** Despite the threatened subpoena to summon Feinstein for a deposition, movant Citibank has demonstrated no desire to call Feinstein as a witness at trial. In fact, counsel for both parties have exchanged multiple, albeit unsuccessful, requests that each stipulate to the other that Feinstein will *not* testify. *See, e.g.,* Doc. 13–3, p. 1; Doc. 11–1, p. 2.

In particular, examining the Complaint, the claims arising on or before April 6, 2012 likely include the First Four Causes of Action: (1) negligence with respect to Citibank's actions on April 6, 2012, in allegedly requesting Greenwich Bank to "close down Plaintiff's revolving construction line of credit and to stop processing Plaintiff's application for ... permanent financing," Doc. 1–1, p. 5 (¶ 22); (2) intentional interference with Plaintiff's business relations with Greenwich Bank—*i.e.*, interfering with Plaintiff's revolving construction line of credit and preventing further processing of his loan application, *id.*, p. 6–7 (¶¶ 31–38); (3) negligent interference with contract, alleging Citibank's negligent failure to "take ordinary precautions to avoid interfering with Plaintiff's contractual relations," *id.*, p. 7 (¶¶ 49–43); and (4) violation of CUTPA, by engaging in "unfair business practices prohibited by [Connecticut] General Statutes § 42–110a et seq." *id.*, p. 8 (¶¶ 44–48).

Second, as to claims that arose in whole or part *after April 6, 2012*, Citibank's counsel, Noah Weissman, argues that Feinstein possesses, by his own admission, relevant information regarding communications he had with Greenwich Bank *after* that date. *See, e.g.*, Doc. 14–2 (Jan. 10, 2013 email from Richard Muskus, President of Greenwich Bank, to Feinstein, discussing "the timetable of events and the corresponding circumstances" regarding "Ardemasov"). For example, Greenwich Bank's President Muskus wrote that "[o]n May 29th ... I personally contacted Attorney Feinstein requesting status" [of the construction loan payoff]; and "Feinstein responded thereafter that he was unaware of such a payoff pending from a third party and was surprised to learn that the Bank was not continuing to pursue approval." *Id.* Furthermore, in June and July of 2012, Citibank allegedly advised Feinstein of three false, contradictory explanations of why Citibank denied Plaintiff's mortgage applications on June 19, 2012. *See* Doc. 13, p. 2; Doc. 12–2 (quoting Doc. 14–1, email from Feinstein to Weissman, dated November 9, 2012, describing Feinstein's communications to and with various Citibank executives (Desmond Smith, James Dorcely, Kathleen Timken, Sanjiv Das, Cece Stewart) regarding Citibank's rejection of Plaintiff's loan application). From those communications, it appears that Feinstein was Plaintiff's main contact with Citibank after April 6, 2012, in gathering information about Citibank's actions with respect to his loan applications. The facts Feinstein obtained, including discussions and correspondence with Greenwich Bank's and Citibank's executives, may relate to Plaintiff's various claims.[21]

Nonetheless, Citibank has failed to demonstrate that the information Feinstein obtained after April 6, 2012 is peculiarly or exclusively within his possession, as opposed to the possession of those who communicated with him. Citibank has failed to establish that Feinstein's testimony will be necessary or even "significantly useful" at trial. The written communications and status updates of the Greenwich Bank and Citibank executives may be offered into evidence in conjunction with testimony by

---

21. In particular, such facts may bear on Plaintiff's first cause of action, negligence, alleging that Citibank "acted negligent[ly] in processing Plaintiff's loan application" and "on June 6th, Citi admitted that Plaintiff's loan was still underwriting." Doc. 1–1, p. 5 (¶¶ 25, 28). Such evidence may also bear on his fifth claim, fraudulent concealment of Citibank's actions on April 6, 2012, in that Citibank "hid and concealed the fact that it contacted Greenwich and such concealment was done fraudulently." *Id.*, p. 8 (¶ 51). Citibank has not, however, detailed the specific facts and claims it believes would be addressed by Feinstein's testimony.

those who composed them. Moreover, Feinstein's recounting of communications to him, if offered by Plaintiff for the truth of the matters asserted, may, absent a recognized exception, be excluded as hearsay. Fed.R.Evid. 801(c).

Because it is apparent from the documents presented that Citibank's and Greenwich Bank's employees possess direct knowledge of what happened with respect to the processing of Plaintiff's various loans, those employees are integral witnesses through whom Plaintiff may present the required evidence in his case. As Feinstein represents, they are "firsthand" witnesses who can testify to the relevant and material facts in this case, including the actions of Citibank's employees with respect to Plaintiff's various loans.[22] Doc. 13, p. 2. *See, e.g., Ross v. Great Atlantic & Pacific Tea Co., Inc.,* 447 F.Supp. 406, 408 (S.D.N.Y.1978) ("The rule [of disqualification] is simply not implicated where plaintiffs' prima facie case [or, presumably, defendant's rebuttal] can readily be presented through documents and the testimony of other witnesses who have first hand knowledge of the facts.").[23] Furthermore, the testimony that these multiple witnesses can provide would be "sufficiently cumulative so as to render [counsel's testimony] not significant." *Munk,* 697 F.Supp. at 786. Under such circumstances, the Court cannot find that

Feinstein's testimony would rise to the level of being "significantly useful."

 In addition, many events described in Feinstein's timeline involved his investigative acts, as an attorney on behalf of his client, likely in contemplation of commencing litigation. Where attorneys have obtained facts from others in their capacity as counsel, courts have declined to disqualify them as required to testify. *See, e.g., Kempner v. Oppenheimer & Co., Inc.,* 662 F.Supp. 1271, 1279 (S.D.N.Y. 1987) ("Because [defendant's] attorneys have no first hand knowledge of the forgeries—but, rather, are aware only of what [a witness] told them in their capacity as attorneys—there is no reason that they ought to be called as witnesses in this regard."). One can imagine the chaos that would ensue were counsel routinely disqualified and required to testify regarding investigative facts they compiled in their capacity as counsel in preparation for potential litigation.

In sum, at this time, Citibank has failed to present sufficient evidence that Plaintiff's counsel, Feinstein, "ought to be called as a witness," either for Plaintiff or Citibank in this action. Unlike cases in which counsel are participants in, or are witnesses to, the actual events giving rise to the action, Feinstein is neither the sole, nor a conclusively significant, witness regarding the key facts supporting Plaintiff's claims.

---

**22.** Although the fact that others may testify regarding the same evidence is not in and of itself determinative on disqualification, courts have examined the existence of alternate sources of evidence to assess the necessity and/or the potential significance of counsel's testimony. For example, because Citibank's employees shared with Feinstein their particular actions regarding Aredmasov's various loans, their direct testimony regarding those actions would likely carry more weight at trial and be more useful to Plaintiff than words conveyed to Feinstein.

**23.** The Court also notes that neither side addressed the issue of prejudice with respect to testimony by Feinstein. Weissman implies that Citibank believes that such testimony would be helpful to Plaintiff in that it would be "necessary" to present his case. Feinstein denies that his testimony is necessary and suggests that other "first hand" witnesses may present the required evidence of the claims.

## VI. CONCLUSION

After careful review of the evidence presented, the Court concludes that Defendant Citibank has failed to meet the requisite high standard of proof to show that Plaintiff's counsel, Albert Feinstein, "ought to testify" in these proceedings. D. Conn. L. Civ. R. 83.13(a). Although Feinstein investigated what happened following Citibank's alleged April 6, 2012 instructions to Greenwich Bank, there is no indication that he has firsthand knowledge of, or is the sole witness to, the facts allegedly giving rise to Plaintiff's claims. Granted, after April 6, 2012, Feinstein received relevant communications from Citibank's and Greenwich Bank's employees. However, the facts contained in those statements may be presented by calling their authors, those with firsthand knowledge. Thus, taking into account factors such as the significance of the matters, weight of the testimony, and availability of other evidence, there is insufficient evidence at this time to conclude that Feinstein is a necessary witness, *Security Ins. Co. of Hartford*, 2002 WL 31387484, at **2–3,[24] or one who could provide evidence "significantly useful" to his client, *MacArthur*, 524 F.Supp. at 1208.[25]

In the totality of circumstances revealed by the present record, the Court DENIES the Defendant's Motion [Doc. 12] to Disqualify Plaintiff's counsel, without prejudice to possible renewal at a later date.

If after discovery or at trial, it becomes clear that Feinstein "ought to testify as a witness on behalf of [his] client"—*e.g.*, because he possesses unknown crucial evidence and/or other witnesses turn out not to be available—he must withdraw his representation of Ardemasov or be subject to disqualification by the Court.[26] D. Conn. L. Civ. R. 83.13(b). Also, if it becomes clear that Feinstein "ought to testify" on behalf of Citibank, he must withdraw from representing Ardemasov if it becomes "apparent that his ... testimony is or may be prejudicial" to Ardemasov. *Id.* If Feinstein fails to withdraw under either of the foregoing circumstances, the parties may bring the issue of his disqualification once more before the Court by motion.

By approaching the case in this manner, the Court follows the precedents of some of the cited cases, where the trial courts were able better to evaluate the necessity of calling an attorney as a witness after depositions and other discovery had been conducted.

With the disqualification issue hereby resolved for the present time, the parties are also ORDERED to comply with their obligations pursuant to Local Rule of Civil Procedure 26(f)(1). Namely, counsel are directed to confer on or before **May 30**,

---

24. *See also Gandler v. Nazarov*, No. 94 CIV. 2272(CSH), 1994 WL 391665, at *2 (S.D.N.Y. July 28, 1994) (attorney subject to disqualification—"ought to be called as a witness" on behalf of client—if it is likely that his testimony is "necessary," taking "into account factors such as the significance of the matters, the weight of the testimony, and the availability of other evidence"); *accord Yankelevitz v. Cornell Univ.*, No. 95 CIV. 4593(PKL), 1996 WL 447749, at *3 (S.D.N.Y. Aug. 7, 1996) (citing *Gandler* to disqualify attorney whose testimony was "necessary" in the instant litigation).

25. For example, Feinstein may have been the recipient of multiple hearsay statements by Citibank's and Greenwich Bank's employees, which absent a recognized exception, would be barred at trial if offered for the truth of the matters asserted. Fed.R.Evid. 801(c).

26. *See, e.g.*, *MacArthur*, 524 F.Supp. at 1210 ("although the problem of disqualification should be anticipated as early as possible to minimize expense, inconvenience, and needless expenditure of judicial resources, the rule controls irrespective of when the need for the attorney's testimony becomes evident").

58

2014 and "jointly complete and file a report in the form prescribed by Form 26(f)" within fourteen (14) days after the conference. *See* D. Conn. L. Civ. R. 26(f)(1).

Lastly, in light of the parties' representations regarding prior attempts at settlement, counsel are reminded that they may, if so advised, file a joint motion for referral of this case to a magistrate judge for a settlement conference should they seek to resume said negotiations with assistance.

The foregoing is SO ORDERED.